761 F.2d 878
 Fed. Sec. L. Rep. P 92,036
Edward H. MURPHY and Joan M. Murphy, individually and
derivatively on behalf of shareholders similarly
situated, Plaintiffs-Appellants,
v.
Peter C. GALLAGHER, Michael J. Gallagher, James Murphy, John
Murphy, William Smith, George Catallo, Regina Adams, Maureen
Gibbons, Nannette Meyers, Helen Rogers, Mary Alice Bissel,
Valerie Coyle, John Gallagher, Gerrard Gallagher, United
States Dredging Corporation, Neptune Line, Inc., Gallagher
Brothers Sand and Gravel Corporation, Rockville Scows, Inc.,
Rodermond Industries, Inc., Hampton Scows, Inc., Defendants-Appellees.
 No. 560, Docket 84-7479.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 20, 1984.
Decided May 7, 1985.
 
 Michael C. Devine, New York City (Kieffer & Hahn, New York City, of counsel), for plaintiffs-appellants.
 James M. Hazen, New York City (McHugh, Leonard & O'Conor, New York City, of counsel), for defendants-appellees.
 Wendell Davis, Jr., New York City (Emmet, Marvin & Martin, New York City, of counsel), for Corporate defendants-appellees.
 Before MESKILL, KEARSE and CARDAMONE, Circuit Judges.
 CARDAMONE, Circuit Judge.
 
 
 1
 The crux of this appeal involves an analysis of res judicata. Broadly, res judicata means that a matter once judicially decided is finally decided. Like a river with more than one branch, res judicata embraces two concepts: issue preclusion and claim preclusion. Issue preclusion refers to the preclusive effect of a judgment that prevents a party from litigating a second time an issue of fact or law that has once been decided. Issue preclusion is often called collateral estoppel. The river's second branch is sometimes referred to by the same name as the river itself. That is to say, claim preclusion, the second concept, is sometimes also called res judicata. Under the doctrine of claim preclusion a judgment, once rendered by a court of competent jurisdiction, will be treated thereafter as the "full measure of relief to be accorded between the same parties on the same ... 'cause of action.' " Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc., 575 F.2d 530, 535 (5th Cir.1978). Claim preclusion prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised. See Migra v. Warren City School District Board of Education, 465 U.S. 75, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984); 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Secs. 4402, 4403 (1981); Restatement (Second) of Judgments, Introductory Note before ch. 3 at 131 and Secs. 18, 19 (1982). Although fair play demands that a party have his day in court, the doctrine of res judicata forecloses a second day. For purposes of this appeal and in the interest of consistency in this area of confusing terminology, we will refer to res judicata only in its broad context encompassing its two separate branches, issue preclusion and claim preclusion.
 
 BACKGROUND
 
 2
 The litigation on appeal presents an unfortunate legal battle for corporate control of a successful family business established by the generation that preceded the parties before us. Plaintiffs are Edward H. and Joan M. Murphy, owners of approximately 15% of the shares of defendants United States Dredging Corporation, Neptune Line, Inc., and Gallagher Brothers Sand and Gravel Corporation (collectively referred to as the Corporations). Also named as defendants are Peter C. and Michael J. Gallagher, James and John Murphy, their attorney, George Catallo, nine individuals who are present or former shareholders of the Corporations, and three other corporations related to the Corporations. The first four named defendants are directors of the Corporations and own approximately 33% of their stock. The remaining shares are held in family trusts controlled by defendants or owned by other family members.
 
 
 3
 The events directly leading to this lawsuit occurred over a relatively brief period during the fall of 1979. In October 1979 three shareholders, Regina Adams, Maureen Gibbons, and Nannette Meyers, offered, through their attorney-in-fact defendant Catallo, to sell their shares in the Corporations. They made the offers pursuant to shareholder agreements dated April 16, 1956. The agreements required that selling shareholders first offer their shares to the other shareholders according to the proportionate ownership of corporate stock. If any of the other shareholders declined the initial offer, then the unsold portion of shares would be re-offered to those who had accepted the offer and purchased in the first round.
 
 
 4
 Within a month of the initial offering, plaintiffs accepted the offer to purchase all shares offered them in the first round. Because some shares remained unsold, the three selling shareholders sent offers to sell their unsold shares to the shareholders who had accepted during the first-round offering in October. Plaintiffs accepted the second offering. In their letter of acceptance plaintiffs contended that the first-round acceptances of some of the other shareholders, including the director-defendants, were invalid because those shareholders had not given proper notice of their acceptance pursuant to the shareholder agreements. By the terms of the offers, payment was due on November 26, 1979. Just before that date plaintiff Edward Murphy was fired from his position with the Corporations. Thereafter, neither he nor his wife tendered payment for the shares they had contracted to purchase. The plaintiffs' shares were then re-offered to and purchased by the other shareholders, including the defendants, who had tendered payment.
 
 Federal Proceeding Commenced
 
 5
 In July, 1980 plaintiffs filed a complaint in the United States District Court for the Eastern District of New York. In their first cause of action against the five individual defendants, plaintiffs alleged violations of Sec. 10(b) of the Securities and Exchange Act of 1934 (1934 Act) and SEC Rule 10b-5 charging that defendants had engaged in a scheme to defraud them in connection with the sale of the Corporations' stock. The complaint also included 13 pendent state claims alleging corporate waste and mismanagement, improper exclusion of plaintiff Edward Murphy from the management of and his wrongful discharge from the Corporations, and breach of the shareholder agreements. Six of the state causes of action were asserted only against the corporate defendants.
 
 
 6
 Plaintiffs charged that the four director-defendants engaged in a scheme to defraud the minority shareholders and gain control of the Corporations. They claimed that defendants had persuaded the three shareholders to sell by withholding dividends and failing to disclose information regarding corporate profitability to shareholders. They also asserted that defendants had appointed their own attorney as attorney-in-fact for the selling shareholders and thus carried out the sale contrary to the provisions of the shareholder agreements. And, finally, plaintiffs claimed that by excluding Edward Murphy from the management of the Corporations and by discharging him just before payment for the shares was due, defendants created a financial hardship for the plaintiffs that impaired their ability to purchase the stock offered to them. Plaintiffs asserted that the result of this scheme was to put defendants in control of the Corporations.
 
 
 7
 In March 1981 defendants moved to dismiss plaintiffs' complaint. Following an evidentiary hearing, District Judge Thomas Platt dismissed the 13 pendent state claims, including those asserted against the six corporate defendants. Although recognizing that it had the power to decide the pendent claims, the district court dismissed these state claims because they substantially predominated by number and by nature, the 15 pendent parties substantially outnumbered the five defendants to the federal claim, the federal claims appeared to be of questionable validity, and the impetus for the entire suit was an interfamily quarrel. See United Mine Workers v. Gibbs, 383 U.S. 715, 726-27, 86 S.Ct. 1130, 1139-40, 16 L.Ed.2d 218 (1966).
 
 
 8
 At the same time, the district court denied defendants' motion to dismiss plaintiffs' complaint for failure to state a federal claim or to allege fraud with particularity. In a well-reasoned opinion, Judge Platt narrowed plaintiffs' Rule 10b-5 claim. Murphy v. Gallagher, No. 80-1843 (E.D.N.Y. Apr. 20, 1981). He dismissed allegations that defendants persuaded the selling shareholders to sell, finding plaintiffs were not injured by that alleged fraud. He also dismissed allegations that defendants failed to disclose material facts because plaintiffs could not show that the alleged nondisclosures were connected to the sale of securities. He concluded that the "real core of plaintiffs' Sec. 10(b) claim" was defendants' alleged conspiracy to seize control of the Corporations by:(1) subverting the selling shareholders' attorney-in-fact in connection with their deception of those shareholders,
 
 
 9
 (2) causing that attorney to offer fewer shares to the plaintiffs than should have been offered, and
 
 
 10
 (3) discharging the plaintiff Edward Murphy from his position to hinder his ability to pay for the shares that he and his wife had contracted to purchase.
 
 
 11
 A month after Judge Platt handed down his decision, plaintiffs filed a second amended complaint, which did not name the Corporations as party defendants. Extensive discovery then ensued from the spring of 1981 until the end of 1982.
 
 Trial of State Action
 
 12
 In December 1982, while the federal securities action was pending in the Eastern District, Marilene Murphy, another shareholder in the Corporations, together with plaintiffs Edward and Joan Murphy petitioned the New York State Supreme Court, Nassau County, seeking judicial dissolution of two of the corporate defendants, Gallagher Brothers Sand and Gravel Corporation and United States Dredging Corporation. The petition alleged that those in control of the Corporations were guilty of "illegal, fraudulent and oppressive actions toward the minority shareholders" and of waste and mismanagement of the assets of the Corporations. Following a trial in January 1984, the state court handed down a written opinion in which it held that there had been no illegal, fraudulent or oppressive actions by the directors or those in control of the Corporations toward the minority stockholders. The state court found neither waste nor mismanagement, and it found no basis for plaintiffs' claim that Edward Murphy was illegally terminated as an officer or director of the Corporations. It therefore denied the relief sought and dismissed the petition.
 
 Trial of Federal Action
 
 13
 Shortly thereafter on April 23, 1984 trial of the federal action began before District Judge Leonard Wexler. After a half-day of trial, Judge Wexler met with counsel to discuss whether the recently concluded state-court dissolution proceeding barred the federal securities law action. After hearing argument on this subject, the district judge stated that unless the plaintiffs produced a recorded stipulation to the effect that the issues raised in the federal action were not part of the state-court action he would dismiss the federal claim. Then, after reviewing the state-court record, the district court dismissed the federal claim. In a written opinion dated August 14, 1984 Judge Wexler denied plaintiffs' motion to vacate the judgment. He stated that "nothing in the transcripts suggests the existence of the alleged stipulation or negates the reasonableness of our finding of collateral estoppel based upon plaintiff's closing arguments and the state court's opinion." Murphy v. Gallagher, No. 84-1843 (E.D.N.Y. Aug. 14, 1984). It is from Judge Platt's April 20, 1981 order and opinion and Judge Wexler's April 23, 1984 determination that plaintiffs appeal.
 
 DISCUSSION
 New York Law
 
 14
 The question presented is whether the state-court judgment in the dissolution proceeding precludes further litigation of the issues in plaintiffs' federal securities law action. We begin our analysis by considering whether under New York law the prior proceeding would preclude plaintiffs from litigating the issues raised in the case at bar.
 
 
 15
 Under New York law "[t]he doctrine of collateral estoppel [issue preclusion] ... precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." See Ryan v. New York Telephone Co., 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984). In Schwartz v. Public Administrator, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969), the New York Court of Appeals set forth the two requirements for raising the doctrine of issue preclusion:
 
 
 16
 New York Law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel [issue preclusion]. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.
 
 
 17
 Id. at 71, 298 N.Y.S.2d 955, 246 N.E.2d 725. Ryan, 62 N.Y.2d at 500-02, 478 N.Y.S.2d 823, 467 N.E.2d 487. The court recognized the doctrine's fundamental policies, that is, increasing judicial efficiency, reducing the number of inconsistent rulings, and promoting the finality of judgments. Schwartz, 24 N.Y.2d at 74, 298 N.Y.S.2d 955, 246 N.E.2d 725. When it is clear that the litigant was afforded his day in court, preclusive effect may be given to issues actually and fully litigated, although not technically necessary to the prior court's judgment. Compare Malloy v. Trombley, 50 N.Y.2d 46, 50-53, 427 N.Y.S.2d 969, 405 N.E.2d 213 (1980), with O'Connor v. G & R Packing Co., 53 N.Y.2d 278, 282-84, 440 N.Y.S.2d 920, 423 N.E.2d 397 (1981). In this case Schwartz 's two-part test is satisfied.
 
 
 18
 First, the state trial judge decided issues in the action before him that are identical to the issues raised in this federal action. Plaintiffs' section 10(b) and Rule 10b-5[1] claims allege the existence of a conspiracy to seize control of the Corporations. Judge Platt found, and we agree, that the only tenable issues of fact plaintiffs raised to support their securities claim concern whether the directors caused the attorney-in-fact to handle the 1979 stock offering improperly, and whether Edward Murphy was wrongfully discharged from his employment with the Corporations. In the petition for dissolution under N.Y.Bus.Corp.Law Sec. 1104-a,[2] plaintiffs sought to prove that the directors had engaged in allegedly fraudulent and oppressive actions against the minority shareholders. Instead of repeating the broad allegations of fraud regarding the 1979 stock sale in their petition, plaintiffs asserted the narrow and precise issues that Judge Platt had delineated. This can be seen from a reading of Paragraphs 21 and 22 of the dissolution petition, which state:
 
 
 19
 Petitioner submits that the officers and directors of these corporations acted fraudulently and oppressively toward petitioners Edward Murphy and Joan Murphy in preventing them from exercising their rights to purchase shares in the corporations being sold by petitioner's sisters at bargain prices. These actions resulted in a greater and disproportionate number of shares being acquired by those in control.
 
 
 20
 In addition, petitioner submits that those in control of the corporations induced George Catallo, an attorney for the companies, to violate a stock sale agreement by refusing to offer petitioners the number of shares to which they were entitled under the procedures specified by the agreement.
 
 
 21
 These are the very issues that Judge Platt outlined in his opinion. Thus, there is little doubt that the issues in the state and federal proceeding are identical. See Kremer, 456 U.S. at 479-80, 102 S.Ct. at 1896-97 (finding that "elements" of plaintiff's state and federal claims were identical). As such they are the only litigable issues in plaintiffs' federal securities law claim, and are therefore decisive of the present action.
 
 
 22
 Additionally, in its March 1984 opinion the state court held:
 
 
 23
 The first question before me is whether the directors' actions were illegal, fraudulent and oppressive to the complaining stockholders. I have gone over the entire record including all of the minutes and I find it difficult to note any oppressive actions by them.
 
 
 24
 ....
 
 
 25
 Furthermore, there is no basis for any claim that EDWARD MURPHY was illegally terminated as an officer or director. In fact, no evidence regarding same was presented.
 
 
 26
 ....
 
 
 27
 There is no proof that the directors of these corporations did anything which might be considered illegal, fraudulent and oppressive to the petitioners, nor was there any evidence that respondents did anything to loot these corporations, nor have they wasted their property, nor done anything for noncorporate purposes.
 
 
 28
 Murphy v. Gallagher Brothers Sand & Gravel Corp., No. 28097/82 (N.Y.Sup.Ct. Mar. 1, 1984). Hence, the issues were necessary to the court's finding that the actions of the directors did not fall within Sec. 1104-a(a)(1), and the first prong of the Schwartz test has been satisfied.
 
 
 29
 We move on to the second prong of that test to analyze whether the party against whom the earlier decision is asserted had a full and fair opportunity to litigate these issues. In Schwartz, the Court of Appeals listed a number of factors used to determine "whether a party has had his day in court." 24 N.Y.2d at 72, 298 N.Y.S.2d 955, 246 N.E.2d 725. These factors include the forum for the prior litigation, its extensiveness, the competence and experience of counsel, availability of new evidence, and indications of a compromise verdict. There is no reason to doubt that plaintiffs had a full and fair opportunity to litigate their claims in the state court. The dissolution proceeding resulted in a trial and there is no suggestion that plaintiffs' counsel was not competent or that new evidence is available that could alter the judgment reached. The fact that the federal action involves several parties that were not parties to the dissolution proceeding does not prevent defendants from using the state-court judgment for purposes of issue preclusion. The rule of mutuality of estoppel no longer applies in New York. B.R. DeWitt, Inc. v. Hall, 19 N.Y.2d 141, 147, 278 N.Y.S.2d 596, 225 N.E.2d 195 (1967).
 
 
 30
 Plaintiffs contend that the parties met with the state judge in his chambers and agreed--because of the pending federal action--not to litigate the issues concerning the 1979 stock sale. Plaintiffs failed to carry their burden of demonstrating that an agreement was reached. See Capital Telephone Co. v. Pattersonville Telephone Co., 56 N.Y.2d 11, 18, 451 N.Y.S.2d 11, 436 N.E.2d 461 (1982) (although proponent of preclusion must prove that the issue was identical and necessarily decided, the opponent must prove that it did not have a full and fair opportunity to litigate the issue); Schwartz, 24 N.Y.2d at 73, 298 N.Y.S.2d 955, 246 N.E.2d 725. Plaintiffs' failure to amend their petition undermines their contention that there was an agreement in state court not to litigate the issues that they now seek to litigate in federal court. Further, the record reveals that in his closing argument the attorney for the petitioners explicitly mentioned these very issues. And the state court, in its opinion, considered and rejected each of plaintiffs' claims arising from those issues. Finally, the district court's finding that there is nothing in the state-court record indicating that the parties had agreed not to litigate issues concerning the 1979 stock sale is not clearly erroneous. The district court correctly ruled that it could not find that a binding stipulation existed unless it was made in open court. N.Y. CPLR 2104 (McKinney 1976). See In re Dolgin Eldert Corp., 31 N.Y.2d 1, 9-10, 334 N.Y.S.2d 833, 286 N.E.2d 228 (1972) (oral agreements purportedly made in an informal conference before a court clerk and a judge in a judge's chambers not made in "open court" and therefore not enforceable).
 
 Full Faith and Credit
 
 31
 Having determined that under New York law the prior proceeding would preclude litigation of the issues raised in the federal action, we consider whether the Full Faith and Credit Statute, 28 U.S.C. Sec. 1738, requires that we give preclusive effect to the state-court judgment. We first consider the Constitutional background.
 
 
 32
 Article IV, Section 1 of the Constitution states:
 
 
 33
 Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.
 
 
 34
 James Madison, when arguing in support of the adoption of the Constitution, stated that this power was included to provide for "harmony and proper intercourse among the States," and was a "valuable improvement" on a similar clause in the Articles of Confederation, and "a very convenient instrument of justice." The Federalist No. 42, at 273, 278 (J. Madison) (Sesquicentennial ed. 1937). In 1790 Congress enacted a Full Faith and Credit Statute, which has remained essentially unchanged. It provides that: "The ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. Sec. 1738 (1982). Thus, the Full Faith and Credit Statute requires federal courts to give the same preclusive effect to state-court judgments that would be given in the State in which the judgments were rendered. Migra, 104 S.Ct. at 896 (Sec. 1983 action); Kremer v. Chemical Construction Corp., 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982) (Title VII); Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (Sec. 1983). In our view the 1934 Act does not modify the operation of Sec. 1738, and the state-court judgment--under the New York law of issue preclusion--bars further litigation of the central issues in this action. Our reasons for reaching this conclusion are explained below.
 
 
 35
 There is no exception to full faith and credit under Sec. 1738 unless a later act of Congress contains an express or implied partial repeal. Kremer, 456 U.S. at 468, 102 S.Ct. at 1890; Allen, 449 U.S. at 99, 101 S.Ct. at 417. The 1934 Act does not expressly repeal Sec. 1738. Hence, whatever modification of Sec. 1738 would cause a state-court judgment to receive less than the preclusive effect the state court would accord it must be implied. Implied repeal is not favored; such must be evident from the language or operation of the statute. Kremer, 456 U.S. at 468-70, 102 S.Ct. at 1890-91; Radzanower v. Touche Ross & Co., 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976). There must be "clear support" in the act of Congress for finding an implied repeal of Sec. 1738. Without such support a federal court has little latitude to apply its own balancing test in weighing the exclusivity interests and the interests embodied in Sec. 1738. Migra, 104 S.Ct. at 897; Kremer, 456 U.S. at 476, 102 S.Ct. at 1894; Allen, 449 U.S. at 99, 101 S.Ct. at 417.
 
 
 36
 Here the only basis for an implied repeal is that the federal district courts have exclusive jurisdiction over violations of the 1934 Act and its rules and regulations. 1934 Act Sec. 27, 15 U.S.C. Sec. 78aa (1982). That the federal-court action raises issues "within the exclusive jurisdiction of the federal courts does not necessarily make Sec. 1738 inapplicable to [the] case." Marrese v. American Academy of Orthopaedic Surgeons, --- U.S. ----, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985) (case involving whether a state-court judgment may have claim preclusive effect on a federal antitrust claim that could not have been raised in the state proceeding). The Marrese Court ruled that "the basic approach adopted in Kremer applies in a lawsuit involving a claim within the exclusive jurisdiction of the federal courts." Id. In order to find that this exclusive jurisdiction limits the application of Sec. 1738 one must conclude, being mindful of the interests of federalism and comity embodied in Sec. 1738, that it was Congress' purpose when it vested exclusive jurisdiction under the 1934 Act in federal courts to part from Sec. 1738. The grant of exclusive jurisdiction here does not constitute a repeal by implication.
 
 
 37
 Exclusive federal jurisdiction over violations of the 1934 Act was motivated by a desire to achieve greater uniformity of construction and more effective and expert application of that law. Yet, for several reasons these general purposes are not a sufficient basis to read the 1934 Act as modifying Sec. 1738. First, the legislative history does not suggest more specific purposes behind the grant of exclusivity. See 2 & 3 L. Loss, Securities Regulation 997, 2005 (1961). Second, in enacting the Securities Acts, Congress was aware of the long-established state securities acts and the well-developed common law of fraud. As a consequence, Congress carefully preserved all existing remedies at law or in equity. 1934 Act Sec. 28(a), 15 U.S.C. Sec. 78bb(a). See 1 Loss, supra, at 23-107. Recognizing the potential for overlap between state and federal adjudication, section 28(a) expressly prohibits double recovery. Third, granting some preclusive effect to state-court decisions for actions exclusively cognizable in federal court does not undermine the stated general purposes of uniformity and expertise underlying exclusivity. Although federal courts have developed legal principles that govern the application of Sec. 10(b) and Rule 10b-5, the components of securities fraud cases--such as intent, scienter, fraud, deceit--involve issues regularly adjudicated in state courts. Issue preclusion is fully applicable when a party has litigated these narrow issues in a state court, and later attempts to relitigate them in a federal court. There generally will be a fairly precise overlap between the state and federal claims when the focus is on these narrow issues. This is a strong reason for giving a state-court decision full preclusive effect as Sec. 1738 requires. New York judges regularly deal with these issues in the context of corporate and securities law cases in a competent and experienced fashion. Thus, in light of Kremer and Allen, the general considerations supporting exclusivity do not alone provide sufficient reason to find an implied partial repeal of Sec. 1738. See Vernitron Corp. v. Benjamin, 440 F.2d 105 (2d Cir.), cert. denied, 402 U.S. 987, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971), in which we vacated a district court order enjoining the appeal of a state action pending the outcome of a federal securities case, holding that the "doctrine of collateral estoppel [issue preclusion] would be applied in any instance where the state court had determined a factual issue arising in a subsequent federal litigation." Id. at 108. See also Klein v. Walston & Co., 432 F.2d 936, 937 (2d Cir.1970) (per curiam); Abramson v. Pennwood Investment Corp., 392 F.2d 759, 762 (2d Cir.1968).
 
 
 38
 Our earlier decision in Lyons v. Westinghouse Electric Corp., 222 F.2d 184 (2d Cir.) (L. Hand, J.), cert. denied, 350 U.S. 825, 76 S.Ct. 52, 100 L.Ed. 737 (1955), does not require a contrary result. In Lyons we ordered a district judge to vacate his order staying a federal antitrust proceeding pending the outcome of a state proceeding in which virtually identical issues, raised as affirmative defenses, were being tried. The Lyons Court emphasized the important policies underlying exclusive jurisdiction for antitrust cases in the federal district courts. Of particular importance was the Sherman Act's treble damages provision, for which there was no state law equivalent. Id. at 189-90. The issues raised in the instant securities fraud action are not different from the common-law fraud issues decided in the state dissolution proceeding. These cases leave little doubt that Sec. 1738 requires that we give the state-court judgment in this case the same issue preclusive effect as would the state courts.
 
 
 39
 Moreover, we hold that the doctrine of issue preclusion under New York law applies in this case, even though use of that doctrine disposes of the entire federal action. Becher v. Contoure Laboratories, Inc., 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929) (state-court trial of an issue precluded litigation of the same issue in a patent action, even though the issue was dispositive of the whole claim). Plaintiffs filed their petition for state dissolution of two corporations after the district court had limited the securities law issues. In their state-court petition, plaintiffs asserted precisely the same two isolated mixed issues of law and fact that formed, after Judge Platt's decision, the entire basis of their federal claim. Those two issues were the alleged fraudulent and oppressive behavior towards minority shareholders and the alleged wrongful discharge of Edward Murphy. We agree with the district court's conclusions on these issues. Thus, there has been both federal adjudication of the plaintiffs' broad Sec. 10(b) claim, and state adjudication of the narrow factual issues raised by that claim. Giving the state-court judgment full preclusive effect therefore satisfies both the exclusivity interests of uniformity and competence and Sec. 1738's interests of comity and federalism.
 
 CONCLUSION
 
 40
 Accordingly, we conclude that the New York courts would give preclusive effect to the judgment of the state court in the dissolution proceedings and prohibit plaintiffs from relitigating the issues decided in that prior action. Thus, it was proper for the district court to bar relitigation of these issues in federal court. Plaintiffs had their day in court and are not entitled to a second one. For the reasons stated the two orders of the district court appealed from are affirmed.
 
 
 
 [1]
 Section 10(b) of the 1934 Act, 15 U.S.C. Sec. 78j(b), provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
 ....
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 Rule 10b-5, 17 C.F.R. Sec. 240.10b-5 (1984), states:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
 in connection with the purchase or sale of any security.
 
 
 [2]
 Sec. 1104-a. Petition for judicial dissolution under special circumstances
 (a) The holders of twenty percent or more of all outstanding shares of a corporation, other than a corporation registered as an investment company under an act of congress entitled "Investment Company Act of 1940", no shares of which are listed on a national securities exchange or regularly quoted in an over-the-counter market by one or more members of a national or an affiliated securities association, who are entitled to vote in an election of directors may present a petition of dissolution on one or more of the following grounds:
 (1) The directors or those in control of the corporation have been guilty of illegal, fraudulent or oppressive actions toward the complaining shareholders;
 (2) The property or assets of the corporation are being looted, wasted, or diverted for non-corporate purposes by its directors, officers or those in control of the corporation.
 N.Y.Bus.Corp.Law Sec. 1104-a(a) (McKinney Supp.1984-1985) (footnote omitted).