Bernard DEUTSCH and Sheila Deutsch, Plaintiffs,

v.

INTEGRATED BARTER INTERNATIONAL, INC., Robert Goldsamt, Mathew Crisci, Jack Feiner, Mark Maged, and IBJ Schroder Bank and Trust Co., Defendants.

No. 85 CIV. 10006 (PKL).

United States District Court, S.D. New York.

Nov. 28, 1988.

Peter R. Silverman, Silverman & Skolnick, P.C., New York City, for plaintiffs.

Norman Solovay, Frank McClain–Sewer, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, for defendant Mark Maged.

Laurence May, Hayt, Hayt & Landau, Great Neck, N.Y., for defendant IBJ Schroder Bank & Trust Co.

H. Richard Penn, Bachner, Tally, Polevoy, Misher & Brinberg, New York City, for defendants, Robert Goldsamt and Mathew Crisci.

James J. Higgins, Boyer, Higgins & Hayden, New York City, for defendant Integrated Barter Intern., Inc.

LEISURE, District Judge.

The plaintiffs in this action seek to recover damages under the Federal Securities laws, common law, and New York's General Business Law; and they seek declaratory relief as well. Certain defendants moved for summary judgment under Fed. R.Civ.P. 56(b), essentially asserting that principles of collateral estoppel and/or *res judicata* block plaintiffs' present claims in this Court. Based on the following findings of fact and conclusions of law, the Court grants summary judgment on all claims as to some defendants, and grants partial summary judgment on only certain claims as to other defendants. The declaratory judgment sought by plaintiffs is denied.

*Background*

Plaintiff Bernard Deutsch is an experienced and sophisticated investor in securities, and was the primary actor in the events that gave rise to this lawsuit. Plaintiff Sheila Deutsch is his wife; all references to "Deutsch" or "plaintiff" will refer to Bernard Deutsch, unless the context indicates otherwise.

Defendant Integrated Barter International ("Barter") is in the business of buying and selling excess consumer merchandise. Barter made an initial public offering consisting of common stock and warrants in December, 1982. In the next few months, plaintiff acquired, under his daughter's name, a number of these Barter securities.

In late June, 1983, Deutsch submitted to defendant IBJ Schroder Bank & Trust Company (formally J. Henry Bank & Trust Company, hereinafter "Schroder") a loan application. That application listed plaintiff's assessed net worth as being in excess of $10,000,000, with $612,000 cash on hand in banks. Plaintiff's stated intention in applying for the loan was to invest in a company called the Regan Corporation. In July, 1983 Deutsch received a demand loan of $1,000,000 from Schroder, initially collateralized by various securities, including the Barter stock and warrants.

Plaintiff applied $810,000 of that $1,000,000 loan to the purchase of additional Barter securities. In August of 1983 Deutsch applied for, and received, another loan of $600,000 from Schroder, of which $349,000 went to the purchase of Barter securities.

In April, 1984, Deutsch delivered to Schroder a mortgage, as further security on the loans described above. Upon nonpayment of the loans, Schroder brought an action in March, 1985, in New York Su-

preme Court, Kings County, (the "prior state action") to foreclose on the mortgage properties.

In the prior state action Deutsch, alleged that Jack Feiner ("Feiner"), Robert Goldsamt ("Goldsamt"), and Mathew Crisci ("Crisci") provided Deutsch with a steady flow of information concerning Barter's acquisition plans. These individuals are defendants to the present action in this Court. This alleged flow of (inside) information purportedly caused Deutsch to purchase additional Barter securities. In the prior state action, Deutsch interposed an affirmative defense and counterclaim that charged Schroder with committing, and aiding and abetting, fraud.

Schroder moved for summary judgment in the prior state court action. Deutsch opposed that motion, and moved to further amend his answer to add Barter, Goldsamt, Crisci, Feiner, as well as Mark Maged ("Maged"), an employee of Schroder, as additional defendants to his counterclaim there. Deutsch also moved to stay the prior state action, pending determination of the present action in this Court.

Hon. Anthony T. Jordan, Jr., Justice of the New York Supreme Court, Kings County, denied the motion to stay the state court proceeding on July 18, 1986. Hon. Julius Vinik, Justice of the New York Supreme Court, Kings County, granted summary judgment against Deutsch, and denied Deutsch's motion to amend, in a ten-page decision issued on April 28, 1987. *Schroder v. Deutsch*, No. 7603/85 (N.Y. Sup.Ct., Kings Cty., April 28, 1987), attached as Exhibit 8 to Solovay Affidavit ("State Opinion").

Defendants Schroder and Maged moved this Court for summary judgment, essentially on the preclusive effect of the prior state court action, but also on the legal sufficiency of certain of the plaintiff's claims. Defendants Barter, Goldsamt, and Crisci formally joined in that motion, indicating their positions by letters to the Court, in lieu of formal motions.

## I. PRECLUSION.

Terminology in the issue preclusion area has been the cause of some confusion; it is therefore helpful to define briefly the terms that will be used here. The Second Circuit in *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir.1985), formulated a clear exposition of the concepts that will be utilized by this Court. "Res judicata" refers broadly to the idea that a matter, once judicially decided, should not be relitigated. There are two concepts embraced by res judicata: issue preclusion and claim preclusion. Issue preclusion is often referred to as "collateral estoppel," and that practice will be followed here. It refers to the preclusive effect of a judgment that prevents a party from litigating, for a second time, an issue of fact or law that has once been decided. *Id.* Collateral estoppel, or issue preclusion, is primarily what defendants presently urge entitles them to summary judgment.

Claim preclusion is often referred to by the name of the broader concept of which it is a part, res judicata. Claim preclusion involves the relief accorded to the parties on the same "cause of action." It prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was actually raised. *Murphy*, 761 F.2d at 879. This idea will be referred to here as "claim preclusion." "Res judicata" will be used only in its broader context.

A federal court incorporates state law principles of issue preclusion in determining whether, and what, preclusive effect should be given to prior state court decisions involving allegedly identical issues. *Migra v. Warren City School District Board of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Ruiz v. The Commissioner of the Department of Transportation of the City of New York*, 858 F.2d 898 (2d Cir.1988).

New York collateral estoppel principles prevent "a party from relitigating 'an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point.'" *Kaufman v. Eli Lilly and Co.*, 65 N.Y.2d 449, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985) (*quoting Gilberg v. Barbieri*, 53

N.Y.2d 285, 441 N.Y.S.2d 49, 50, 423 N.E. 2d 807, 808 (1981)). There are two requirements which must be satisfied before collateral estoppel will be invoked: (1) the identical issue necessarily must have been decided in the prior action and be decisive in the present action; and (2) the party to be precluded must have had a full and fair opportunity to contest the prior determination. *Kaufman*, 492 N.Y.S.2d at 588, 482 N.E.2d at 67; *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 70–71, 298 N.Y.S.2d 955, 959, 246 N.E.2d 725, 728 (1969). The party seeking the benefit of the doctrine has the burden of demonstrating the identity of the issues in the present and prior determinations, and the party resisting its application has the burden of establishing the absence of a full and fair opportunity to litigate the issue in the prior action. *Kaufman*, 492 N.Y.S.2d at 588, 482 N.E.2d at 67; *see also, Sullivan v. American Airlines, Inc.*, 613 F.Supp. 226, 230 (S.D.N.Y. 1985). Notice of appeal of the prior state action does not effect collateral estoppel. *Brown v. Manufacturers Hanover Trust Co.*, 602 F.Supp. 549, 551 (S.D.N.Y.1984). The Court will apply the foregoing principles to the present case. Other concerns that would affect the application of collateral estoppel to this action, and other grounds for summary judgment, will then be considered.

### 1. *Identity of the Issues.*

To determine whether the defendants here have met their burden of establishing an identity of the issues, the Court must analyze and compare the prior state action and the present claims in this case.

As noted above, plaintiffs' Amended Complaint ("Complaint") in this action alleges that defendants Barter, Feiner, Goldsamt and Crisci (the "Barter defendants") made a series of misleading statements of material fact, Complaint ¶¶ 18–29, and that plaintiff bought the Barter securities with the loan funds from Schroder. Complaint ¶¶ 35, 38. Defendants Schroder and Maged are alleged *only* to have aided and abetted the Barter defendants in the allegedly fraudulent sales. Complaint ¶¶ 42–50. The purported fraudulent sales are said, in

this action, to constitute 1) a violation of Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b)"); 2) a violation of Section 17 of that Act ("Section 17"); 3) a violation of Section 352 of the New York General Business Law ("Martin Act"); and 4) common law fraud and deceit.

### A. Schroder and Maged.

In Deutsche's amended answer to the state court proceeding ("State Answer"), Deutsch specifically charged Schroder and Maged with "aid[ing] and abet[ing] ... certain officers, directors and undisclosed promoters of [Barter] in a scheme to fraudulently induce [Deutsch] to purchase publicly traded securities of Barter for a purchase price in excess of one million dollars." State Answer ¶ 4, attached as Exhibit 3 to Affidavit of Norman Solovay, sworn to on September 10, 1987 ("Solovay Affidavit"). Deutsch reiterated those claims, as well as asserted Schroder and Maged's liability as principals for fraudulent misrepresentations, in a proposed amended answer that he sought to interpose in resisting the state summary judgment motion.

■ It is clear that the aiding and abetting fraud liabilities of Schroder and Maged were before Justice Vinik in the prior state action, and that those issues were decided against Deutsch. The state court explicitly considered, and rejected, those claims. State Opinion at p. 8. These claims, even though embodied to some extent in a proposed amended answer that was never in fact allowed by the state court, were nevertheless fully before that court in its determination whether to allow the further amendment. The state court held "that the proposed amended answer and counterclaim are without merit, and that the allegations thereof are belied by the facts presented to this court." *Id.* at p. 9.

The nature of the claims asserted there and here indicates that there is a sufficient identity of issues to invoke collateral estoppel in this action. *Murphy v. Gallagher*, 761 F.2d 878 (2d Cir.1985) is particularly

instructive in this regard. That case, like this one, involved a prior state court decision regarding fraud, and subsequent federal securities claims. The state corporate dissolution action there required determinations of state law fraud issues, which consisted of the same elements as the plaintiffs' federal securities law claims. *Id.* at 883, *citing, Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 479–80, 102 S.Ct. 1883, 1896–97, 72 L.Ed.2d 262 (1981).

■ Justice Vinik's determination that Schroder and Maged did not aid and abet any fraud in connection with the purchase of the Barter securities is sufficiently identical to any claims that might be asserted against them here under Section 10(b) as well as, of course, common law fraud, to foreclose their re-litigation.[1] *See, e.g., Marine Midland Bank v. Smith*, 482 F.Supp. 1279, 1290 n. 15 (S.D.N.Y.1979), *aff'd*, 636 F.2d 1202 (2d Cir.1980) ("Courts have borrowed the concepts of the common law in establishing aider and abettor liability for securities violations.") Plaintiff argues that different standards of proof exist here and make collateral estoppel improper. Different legal issues and standards of proof can defeat the application of issue preclusion, *Cullen v. Margiotta*, 811 F.2d 698, 732 (2d Cir.) *cert. denied*, — U.S. ——, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), but the applicable standards are not so disparate here as to foreclose collateral estoppel. *Cf., Murphy*, 761 F.2d at 883.

On the issue of primary fraud liability, as well, the state court explicitly discussed and made findings on alleged misrepresentations, scienter and reliance with respect to Schroder and Maged. State Opinion at pp. 5–7. Although not asserted by the present Complaint, it is clear that any claim of primary liability for securities fraud against Schroder and Maged would likewise be sufficiently identical to already litigated claims to invoke collateral estoppel.

Defendants Schroder and Maged have met their burden under the first principle of New York's collateral estoppel law in establishing identity of issues. *Kaufman*, 492 N.Y.S.2d at 588, 482 N.E.2d at 67; *Murphy*, 761 F.2d at 883.

B. The Barter Defendants.

As noted above, in opposing the summary judgment at the prior state court proceeding, Deutsch sought to further amend his answer and counter-claim. That proposed amended state answer would have added the Barter defendants, which include Barter, Goldsamt, Feiner and Crisci, to that state action. Affidavit of Bernard Deutsch in Opposition to Summary Judgment in the Prior State Action ¶ 30, attached as Exhibit 5 to Solovay Affidavit. Barter, Goldsamt and Crisci have joined in the motions for summary judgment in this action.

In contrast to the defendants Schroder and Maged, there is no extensive discussion of the role of the Barter defendants in the prior state court opinion. The only explicit reference to those parties at all was in the context of Schroder and Maged's possible aider and abettor liability, in that Schroder and Maged were "accused ... of aiding and abetting and participating in the alleged fraud perpetrated against [Deutsch] *by others unaffiliated with Bank* [Schroder]." State Opinion at p. 5 (emphasis supplied).

A cursory reading of the prior state opinion shows that the possible liability of the Barter defendants was neither explicitly, nor implicitly, decided. It is true that Schroder and Maged, as noted above, were found not to have aided and abetted any fraud that might have been committed. The state court, however, nowhere expressed an opinion as to whether, in fact, any fraud had been committed against Deutsch at all.

The nature of that prior action, furthermore, would not have necessitated such a finding. Deutsch did seek to add the Barter defendants to the state action as counterclaim defendants, and that application was denied. This was in the context, however, of a foreclosure action against

---

1. See Part II below for a discussion of the plaintiff's claims under Section 17(a) and the Martin Act. As will be discussed below, no private right of action under either of these provisions exists, as a matter of law.

Deutsch by the Schroder bank. The state court's concern was with possible meritorious defenses or counterclaims against the plaintiff Schroder in that action, namely possible aider and abettor fraud liability. To the extent that the proposed amended counterclaims implicated Schroder, they were considered and rejected. That rejection does not provide an unassailable preclusive shield that Barter, Goldsamt and Crisci may take advantage of in this action.

■ The defendants Barter, Goldsamt and Crisci have not established that the claims asserted here were sufficiently identical to anything decided in the prior state action to invoke collateral estoppel. *Kaufman,* 492 N.Y.S.2d at 588, 482 N.E.2d at 67; *Murphy,* 761 F.2d at 883.

### 2. Full and Fair Opportunity.

The second element necessary for application of New York collateral estoppel principles is that the "party against whom the earlier decision is asserted had a full and fair opportunity to litigate these issues." *Murphy v. Gallagher,* 761 F.2d 878, 883 (2d Cir.1985). An issue is not actually litigated if "there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation." *Kaufman v. Eli Lilly and Co.,* 65 N.Y.2d 449, 457–58, 492 N.Y.S.2d 584, 589, 482 N.E.2d 63, 68 (1985) (citations omitted).

■ The New York Court of Appeals has enumerated factors properly considered in evaluating whether a full and fair opportunity to litigate was present:

the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence [and] the differences in the applicable law.

*Ryan v. New York Telephone Co.,* 62 N.Y. 2d 494, 478 N.Y.S.2d 823, 827, 467 N.E.2d 487, 491 (1984). *See, also Schwartz v.*

*Public Administrator,* 24 N.Y.2d 65, 75, 298 N.Y.S.2d 955, 962, 246 N.E.2d 725, 730 (1969). In light of the above *Ryan* factors, a full and fair opportunity to litigate certainly existed.

The adequacy of the opportunity to litigate, in fact, warrants little discussion. It is beyond question that the forum was proper, the claims of fraud before it were important, Deutsch had every incentive to litigate in the state court, and his counsel was much more than competent. There was sufficient identity of the issues constituting the legal claims, as discussed above.

Deutsch, despite submitting lengthy affidavits and memoranda in support of his positions in the prior state action, nevertheless asserts that he was impermissably handicapped there. Plaintiff was not allowed unfettered discovery in that action; he maintains that the preclusive effect of the prior state judgment should therefore be limited. Completely unlimited discovery is not, however, necessarily an element of a full and fair opportunity to litigate. In addition, plaintiff has been permitted to conduct extensive discovery by this Court since that judgment, and has filed an affidavit in opposition to *this* motion that incorporates that additional discovery. Plaintiff's contentions reveal no additional facts, regarding the possible aider and abettor liability of Schroder or Maged, that would have been unknown or unavailable to Deutsch through deposition or document production prior to the summary judgment decision in the state action.[2] *See,* Affidavit of Bernard Deutsch, sworn to December 15, 1987 ("Deutsch Affidavit"). Plaintiff is unable to raise additional evidentiary matters at his point that would sustain his burden of establishing the lack of an adequate opportunity to litigate the claims.

■ Finally, plaintiff apparently attempts to distinguish *Murphy v. Gallagher,* 761 F.2d 878 (2d Cir.1985), by noting that that case involved collateral estoppel

---

**2.** As indicated above, Schroder and Maged are the only defendants who have met their burden under the first "identity-of-issue" principle of collateral estoppel. The Court expresses no

opinion at this time as to the sufficiency of the present factual support for the claims against the other defendants to this action.

of issues after a full trial at the state level, while the present case was decided on summary judgment motion. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Plaintiff's Mem."), at p. 17. This distinction is meaningless. It is well settled that a fully litigated and opposed summary judgment determination can constitute a full and fair opportunity to litigate a claim. *See, e.g., Blythe Industries, Inc. v. Puerto Rico Aqueduct and Sewer Authority,* 607 F.Supp. 1386, 1388 (S.D.N.Y.1985).

Plaintiff has not overcome its "burden of establishing the absence of of a full and fair opportunity to litigate the issue in the prior action." *Kaufman,* 492 N.Y.S.2d at 588, 463 N.E.2d at 67. The requirements of collateral estoppel under New York law are thus initially satisfied with respect to defendants Schroder and Maged. The Court now turns to other arguments advanced by plaintiff, and that plaintiff urges make preclusion improper in the present case.

### 3. Jurisdiction Over Securities Law Claims.

■ Deutsch makes much of the fact that federal courts have exclusive jurisdiction over federal securities and § 10b–5 actions, citing, for example, *Weinberger v. Kendrick,* 698 F.2d 61 (2d Cir.1982). While that assertion, standing alone, may undoubtedly be true, in the present context, it is simply irrelevant. As *Murphy v. Gallagher,* 761 F.2d at 885 makes clear:

> Although Federal courts have developed legal principles that govern the application of § 10 and Rule 10b–5, the components of securities fraud cases— such as intent, scienter, fraud, deceit—involve issues regularly adjudicated in State courts. Issue preclusion is fully applicable when a party has litigated these narrow issues in a State court, and later attempts to re-litigate them in a Federal court.

*See, also, Texaco, Inc. v. Pennzoil Co.,* 784 F.2d 1133 (2d Cir.1986), *rev'd on other grounds,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). Deutsch's assertion that

"[a]ny issues concerning [10b–5] claims which may have been decided in the State Court Action are, at best, *dicta,*" is, in light of the above, particularly inapposite.

### 4. Judicial Estoppel.

Plaintiff asserts that Schroder took the position in the prior state action that the federal and state actions were separate, and Schroder "was successful in its summary judgment motion based on the very arguments which it contradicts in the present action." Plaintiffs' Mem. at p. 11. If the positions taken by Schroder were truly inconsistent, it could be estopped from asserting the inconsistent position here. *Cf., Gilmore v. Shearson/American Exp. Co.,* 811 F.2d 108, 113 (2d Cir. 1987) ("Ordinarily, a party may not freely take inconsistent positions in a law suit and simply ignore the effect of the prior filed document.") Where two tribunals adopt contradictory positions advanced by a party, one of the courts has likely been misled. *Edwards v. Aetna Life Insurance,* 690 F.2d 595 (6th Cir.1982).

The Schroder position to which Deutsch objects was actually asserted in Schroder's opposition to the stay motion in the prior state action. In opposing that stay, Schroder argued that the judgment sought in the two actions had to be "identical" for the state court to impose a stay. *Pierre Associates, Inc. v. Citizens Casual Company of New York,* 32 A.D.2d 495, 304 N.Y.S.2d 158, 160 (1st Dep't 1969). It then pointed to the fact that the remedy sought in the state action was foreclosure on a piece of real property, while Deutsch's federal action sought money damages. Schroder also argued that Deutsch would not be unduly burdened by the two actions proceeding simultaneously. This was a recognition that the state action was already at the summary judgment stage, and any further discovery would have been equally applicable to either action.

■ Judicial estoppel, the doctrine that can prohibit parties from changing their positions in succeeding judicial proceedings, is not uniformly applied, has no clear standards of proof with which to invoke it,

and "where applied, the principle has been applied with caution, only to positions which were legally relevant in the prior proceeding." *United States v. Starrett City Associates,* 605 F.Supp. 262, 263 (E.D. N.Y.1985). (citing *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1167 (4th Cir.1982)). The essential elements for the application of judicial estoppel include intentional, inconsistent, and unequivocal assertions of law or fact by a party in succeeding judicial proceedings, made in order to mislead the court and obtain unfair advantage as against another party. *Starrett City,* 605 F.Supp. at 264.

Application of these principles clearly reveals that a judicial estoppel doctrine would not be appropriate in the present case, if it were applied at all. *See, Starrett City,* 605 F.Supp. at 263 ("it is less than clear whether the doctrine has vitality in the Second Circuit."); *United States v. Bedford Associates,* 713 F.2d 895 (2d Cir.1983). Schroder's arguments made in opposition to staying the prior state proceeding do not eliminate the preclusive effect of that fully litigated action.

Collateral estoppel is fully proper with regard to the defendants Schroder and Maged. Count Five of the Complaint here seeks a declaratory judgment that the promissory notes executed in conjunction with the loans by Schroder to Deutsch are void and of no legal effect. As this Court grants summary judgment for the defendant Schroder bank, the declaratory relief is of course denied.

## II. MARTIN ACT AND SECTION 17(a) CLAIMS.

Apart from the collateral estoppel effects of the prior state action, defendants seek summary judgment on the basis that the claims asserted by plaintiffs are deficient as a matter of law, namely, that there is no private right of action under either New York's Martin Act or Section 17(a) of the 1934 Securities Exchange Act. The Court agrees with these positions, and grants summary judgment with respect to Counts Two and Three of the Complaint.

■ *CPC Intern., Inc. v. McKesson Corp.,* 70 N.Y.2d 268, 519 N.Y.S.2d 804, 514 N.E.2d 116 (1987) is dispositive of the state law claim asserted in Count Three. After thorough review, the New York Court of Appeals clearly and unequivocally held that no private cause of action impliedly exists under the Martin Act. *Id.* 519 N.Y.S.2d at 807, 514 N.E.2d at 118.

■ This Court recently visited the issue of a private right of action under Section 17(a). *Dubin v. The E.F. Hutton Group, Inc.,* 695 F.Supp. 138, 148 (S.D.N.Y.1988). As noted there, the continued vitality of *Kirshner v. United States,* 603 F.2d 234, 241 (2d Cir.1978), *cert. denied,* 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979), which held that a private right of action exists under Section 17(a) similar to the one implied under Section 10(b), is open to question. The Court of Appeals has, since *Kirshner,* declined in a particular case to determine whether a private right of action is implied under Section 17(a). *Manufacturers Hanover Trust Company v. Drysdale Securities Corp.,* 801 F.2d 13 (2d Cir. 1986) *cert. denied* 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). Judge Friendly, in *Yoder v. Orthomolecular Nutrition Institute, Inc.,* 751 F.2d 555, 559 n. 3 (2nd Cir.1985), suggested that the Court's determination, in *Kirshner,* that a private right of action exists, "may be open to reexamination."

As *Dubin v. E.F. Hutton, supra,* makes clear, this Court has followed the lead of other judges in this District in concluding that *Kirshner* is no longer controlling with respect to Section 17(a) actions, and has "been persuaded by the reasoning of the recent and ever-increasing authority to the effect that there is no such private right [of action under Section 17(a)]." *Anderson v. Lowrey,* 667 F.Supp. 105, 110 (S.D.N.Y.1987) (Sand, J.). *See also, Ackerman v. Clinical Data, Inc.,* [1985–1986 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,207 (S.D.N.Y. July 8, 1985) [1985 WL 1884]; *The Limited, Inc. v. McCrory Corp.,* 683 F.Supp. 387, 393–94 (S.D.N.Y.1988) (Carter, J.); *Beres v. Thomson McKinnon Sec., Inc.* [1987 Transfer Binder] Fed.Sec.

L.Rep. (CCH) ¶ 93,395, at 97,072 (S.D.N.Y. September 10, 1987) (Kram, J.) [1987 WL 16977]. *But see, Krome v. Merrill Lynch & Co.*, 637 F.Supp. 910 (S.D.N.Y.1986) (Edelstein, J.). Other circuits have likewise departed from the implied action holding of *Kirshner. In re Washington Public Power Supply System Securities Litigation*, 823 F.2d 1349 (9th Cir.1987) (*en banc*); *Landry v. All American Assurance Co.*, 688 F.2d 381 (5th Cir.1982).

In accord with the above, Counts Two and Three of the Complaint are dismissed as to all defendants.

 Finally, defendants Goldsamt and Crisci assert that the "fiduciary shield doctrine" entitles them to summary judgement. That doctrine, sometimes applied as an equitable rule in Federal courts, can shield an individual corporate officer from personal jurisdiction when he is sued for actions that relate to his corporate business in the forum state. *See, e.g., Marine Midland Bank v. Miller*, 664 F.2d 899, 902 (2d Cir.1981). The Court need only note here that the fiduciary shield doctrine is of questionable validity in New York, *CPC International Inc. v. McKesson Corp.*, 70 N.Y. 2d 268, 287, 519 N.Y.S.2d 804, 814, 514 N.E.2d 116, 125 (1987), and that the doctrine does not, in any event, provide a basis for attacking proper state long arm jurisdiction. *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1983). Furthermore, Golsamt and Crisci are domiciliaries of the State of New York, and New York's long arm jurisdiction is not even implicated. Application of the fiduciary shield doctrine is not proper here, and does not provide a basis for summary judgment for the defendants Goldsamt and Crisci.

## CONCLUSION

Defendants Schroder and Maged's motions for summary judgment are granted, and consequently the declaratory judgment sought in count five of the Complaint is denied. Summary judgment is granted for all defendants with respect to Counts Two and Three of the Complaint. Summary judgment for defendants Barter, Goldsamt

and Crisci is denied with respect to Counts One and Four of the Complaint. Counsel for the remaining parties are ordered to appear in Courtroom 36 for a pre-trial conference on January 13 at 3:00 p.m.

SO ORDERED.