**William H. LYNCH, Plaintiff,**

**v.**

**The UNITED STATES of America DEPARTMENT OF the ARMY CORPS OF ENGINEERS, Defendant.**

**Civ. No. H–77–1433.**

United States District Court,
D. Maryland.

Feb. 22, 1978.

Parker B. Smith and Risque W. Plummer, Baltimore, Md., for plaintiff.

John W. Sheldon, Asst. U. S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, District Judge.

This is a civil action brought against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. The plaintiff here seeks money damages because of certain actions involving his real property taken by the Corps of Engineers of the Department of the Army.

On behalf of the government, the United States Attorney for the District of Maryland has filed a motion to dismiss the complaint, which, with the consent of the parties, has been treated as a motion for judgment on the pleadings.[1] Wright & Miller, *Federal Practice and Procedure Civil,* § 1357 at 593. The government contends that this action is barred by the two-year statute of limitations contained in 28 U.S.C. § 2401(b) and by the "discretionary function" or "misrepresentation" exceptions to the Federal Tort Claims Act, contained in 28 U.S.C. § 2680(a) and (h). After reviewing the briefs submitted in support of and in opposition to the motion and after hearing oral argument in open court, this Court is satisfied that defendant's motion for judgment on the pleadings should be granted.[2]

## I

### The facts

Plaintiff, William Lynch, is a real estate developer residing in Ocean City, Maryland, who previously sought to do dredging and fill work on certain waterfront property owned by him adjoining Herring Creek at Cape Isle of Wight, Worcester County, Maryland. Some twenty-five years ago, on January 16, 1953, the then District Engineer of the Army Corps of Engineers advised plaintiff that "[i]f all of the proposed work, including disposal of the excavated material, is performed landward of the mean high water line as outlined in your

---

1. The pleadings in this case include the complaint with attached exhibits, the defendant's motion with attached exhibits, and the briefs in support of and in opposition to the motion. Those exhibits which the Court considered in deciding this motion are the letters between plaintiff and the Corps of Engineers which are attached to the complaint and the administrative claim filed by plaintiff with the Corps.

2. In view of this disposition, this Court need not reach the government's contention that plaintiff's *ad damnum* clause must be reduced to the purportedly lower figure sought in the administrative proceedings. *See Kielwien v. United States,* 540 F.2d 676, 681 (4th Cir.), *cert. denied,* 429 U.S. 979, 97 S.Ct. 491, 50 L.Ed.2d 588 (1976).

letter, a Department of the Army permit will not be necessary."

Many years later, in February 1972, the proposed work had not yet been completed, and plaintiff at that time decided to resume the project. In November 1972, a Field Inspector of the Army Corps of Engineers warned plaintiff that he would need a permit to continue his work. By letter dated December 1, 1972, the Army Corps of Engineers advised plaintiff:

A routine field investigation on 16 November 1972 disclosed that you had performed dredging in an unnamed tributary of Turville Creek at Cape Isle of Wight.

Records in this office indicate that neither a Department of the Army permit nor a letter of permission authorizing this additional work was issued by this office. For your information, Section 10 of the River and Harbor Act of 3 March 1899 states that "it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structure in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable waters of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same." (30 Stat. 1151; 33 U.S.C. 403, as amended).

You are directed to perform no more such work at this or any other location in a navigable waterway without compliance with the law. Violations of Section 10 of the River and Harbor Act of 3 March 1899 are subject to prosecution by the Office of the Attorney General of the United States.

Upon receipt of this letter, plaintiff discontinued his work, and on December 7, 1972, he applied for a permit.

By letter dated April 21, 1975, the District Engineer subsequently informed plaintiff that he would be permitted to complete the one remaining canal covered by his 1953 plans. That letter stated:

It was brought to my attention that, on 16 January 1953, you had received from the then District Engineer, Colonel Whittaker, a letter advising that you would not require a Corps of Engineers permit to perform the development contemplated. However, it was understood that the above lagoon represented new work over and beyond that contemplated by Colonel Whittaker.

A public notice concerning your request for approval of plans was issued on 16 March 1973. In response thereto, this office received comments from the Environmental Protection Agency, the U. S. Department of the Interior and the State of Maryland objecting to the work for ecological and environmental reasons. In view of the objections by the Environmental Protection Agency and the U. S. Department of the Interior, your application was forwarded to the Division Engineer, North Atlantic Division, who returned the matter to this office for further information.

Upon further investigation and reconsideration of this matter, however, I have learned of additional facts and circumstances which have led me to the conclusion that the disclaimer issued by Colonel Whittaker in his letter of 16 January 1953 operates as a valid disclaimer of jurisdiction over the work in question within the meaning of the present Corps of Engineers regulations; since the above canal was a part of your intended scheme of development as reflected in drawings prepared at that time. Accordingly, the cease and desist order issued to you by letter dated 1 December 1972 is hereby

withdrawn and this office will interpose no objections to your completing the one remaining canal now under construction. However, no further work shall be performed in the waters of the United States without a current permit from this office. It should be expressly understood that such prohibition includes any connection of canals and lagoons on privately developed land to waters of the United States without first obtaining the required authorization by the Secretary of the Army.

In addition, the disclaimer issued by Colonel Whittaker in his letter of 16 January 1953 is hereby withdrawn and shall be of no force and effect for any future work performed by you at Cape Isle of Wight other than the completion of the construction in dispute.

I appreciate your cooperation in this difficult matter and am happy such an agreement could be reached.

On February 24, 1977, plaintiff filed an administrative claim for damages with the Corps of Engineers of the United States Army, pursuant to 28 U.S.C. §§ 2401 and 2671 *et seq.* In his administrative claim form, plaintiff described the alleged tort as follows:

The United States Army Corps of Engineers refused to permit me to continue dredging within the Cape Isle of Wight community west of Ocean City, Maryland in late 1972.

After the expiration of the statutory six-month period during which the Corps took no action, 28 U.S.C. § 2675(a), plaintiff filed the pending civil action in this Court.

## II

### Plaintiff's claims

To prevail in an action under the Federal Tort Claims Act, a plaintiff quite obviously must allege facts indicating that a representative of the government has committed a tort. Plaintiff concedes that the tort which is the basis for this claim is difficult to describe. At the hearing, counsel for plaintiff asserted that the tort was "unusual, not easily categorized," "akin to neg-

ligent misrepresentation but more than that," and a "sort of malpractice" albeit not involving any act by a member of a learned profession.

From a reading of the complaint, it appears that plaintiff in essence is contending that the Army Corps of Engineers was grossly and maliciously negligent in ordering plaintiff to stop work in December 1972 when it had previously authorized the project nineteen years before in 1953. Plaintiff further alleges an ancillary claim involving the alleged breach of an implied contract arising as a result of the letter sent to him by the Corps on January 16, 1953.

## III

### Limitations

28 U.S.C. § 2401(b) provides:

(b) A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

■ It is clear from the legislative history, S.Rep.No.1327, 89th Cong., 2d Sess. (1966) in U.S.Code Cong. & Admin.News, p. 2515 and from the pertinent case law, *e. g., Bridgford v. United States*, 550 F.2d 978, 981 (4th Cir.1977), that a potential plaintiff must present his tort claim to the appropriate agency in writing within two years after the claim accrues *and* must commence a civil action within six months after administrative denial.

■ Federal law determines when a claim accrues under § 2401(b). *Portis v. United States*, 483 F.2d 670, 672 n.4 (4th Cir.1973). Defendant contends that plaintiff's claim accrued shortly after December 1, 1972 when plaintiff received the letter directing him to discontinue work. Therefore, defendant argues, the administrative claim of February 24, 1977 (over four years

later) is barred by the two-year statute of limitations. Plaintiff, on the other hand, contends that the tort was a "continuing tort" from December 1972 to the date of the Corps' letter of April 21, 1975 and that the filing of the administrative claim in February 1977 was therefore timely.

At the outset, this Court would note that plaintiff's own administrative claim states that the alleged tort occurred when "[T]he United States Army Corps of Engineers refused to permit me to continue dredging * * * in late 1972." Certainly, plaintiff should be bound by his own statement made in the course of the administrative proceedings as to the date when his cause of action accrued. The claim presented in writing to the Corps of Engineers was therefore a claim arising in late 1972. If plaintiff now seeks to press in this Court a claim arising at some later date, he has not satisfied the statutory requirement that he first present his claim to an appropriate federal agency.

Moreover, under the Federal Tort Claims Act, "[o]ne who knows that an injurious tort has been committed against him may not delay the filing of his suit until the time, however long, when he learns the precise extent of the damage resulting from the tort * * * [T]he running of a statute of limitations does not await determination of the full extent of injury." *Portis v. United States, supra* at 672. Although the *effects* of the alleged wrongful conduct may have continued until the matter was reconsidered by the Corps in April 1975, nevertheless the cause of action accrued when the alleged wrongful conduct actually occurred in December 1972. *Newberg v. Federal Savings and Loan Insurance Corp.*, 317 F.Supp. 1104, 1106 (N.D.Ill.1970).

The essence of plaintiff's claim is that he should not have been prohibited from going ahead with the projected work in 1972. Had he proceeded with the work then, the damages allegedly occurring between 1973 and 1976 would not have been sustained. Quite clearly then, the alleged negligence on the part of the Corps of Engineers resulted from its refusal to permit plaintiff to proceed with dredging and fill work in 1972. The alleged negligent act accordingly occurred in that year, even though the Corps may have allegedly admitted its negligence several years later in 1975.

Arguments similar to the contrived one advanced by plaintiff here that this was a "continuing tort" have been rejected repeatedly by the courts in construing 28 U.S.C. § 2401(b). *E.g., Mims v. United States*, 349 F.Supp. 839 (W.D.Va.1972). As one court has stated, "Plaintiff may not, in effect, hide its head in the sand, ignoring the accrual of a cause of action until the two-year limitation period has expired and then attempt to circumvent the limitation by alleging a combination of tortious acts or a continuing tort." *United Missouri Bank South v. United States*, 423 F.Supp. 571 (W.D.Mo.1976) at 577.

The cases relied upon by plaintiff in opposing the pending motion do not support his contentions. *United States v. Dickinson*, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947), involved the taking of an easement by the government under the Tucker Act. That case did not involve torts nor "continuing torts", but rather held that the statute of limitations began to run when the government taking was completed. *Oro Fina Consolidated Mine v. United States*, 92 F.Supp. 1016, 118 Ct.Cl. 18 (1950), was also a Tucker Act case. *Donaldson v. O'Connor*, 493 F.2d 507 (5th Cir.1974), *vacated and remanded*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), held that a civilly committed patient's cause of action for lack of treatment accrued upon his release. Plaintiff here was under no similar disability during the two years following receipt of the December 1, 1972 letter from the Army Corps of Engineers. When he received that letter, he certainly knew that he had previously been told in 1953 that no permit was necessary, and he could have then apprised himself of any other facts necessary to charge the Corps with negligence.

Finally, the malpractice cases relied upon by plaintiff are *sui generis* because the statute of limitations for malpractice runs from the date of *discovery* of the malpractice. What occurred here is hardly akin to malpractice committed by a doctor or lawyer. Moreover, those cases do not help plaintiff because he was fully aware that the alleged wrongful action occurred in December 1972 when he stopped work on his canal.

### IV

### *The discretionary function and the misrepresentation exceptions*

The Federal Tort Claims Act contains numerous exceptions. As an alternative argument, the government here contends that this action is barred by 28 U.S.C. § 2680(a), which provides:

§ 2680. Exceptions

The provisions of this chapter and section 1346(b) of this title [28 USCS § 1346(b)] shall not apply to—(a) Any claim * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

The present case arises out of enforcement actions taken by the United States Army Corps of Engineers pursuant to the Rivers and Harbors Act of 1899, 33 U.S.C. § 401 *et seq.* The relevant section is 33 U.S.C. § 403, which provides:

§ 403 Obstruction of navigable waters generally; wharves; piers, etc.; excavations and filling in

The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

Mar. 3, 1899, c. 425, § 10, 30 Stat. 1151.

The factors which the Army Corps of Engineers must consider in the issuance of a permit are specified by regulation. On December 18, 1968, the Corps of Engineers published an amended regulation which took into account increasing environmental concerns.[3] That regulation, published in 33 Federal Register 18670 and codified in 33 C.F.R. § 209.120(d)(1), revised as of 1972, stated:

(d) *General policies on issuing permits*

(1) The decision as to whether a permit will be issued must rest upon an evaluation of all relevant factors, including the effect of the proposed work on navigation, fish and wildlife, conservation, pollution, aesthetics, ecology, and the general public interest * * *

The current regulation incorporates these environmental concerns as well as other specific criteria. 33 C.F.R. § 209.120(f)(1), revised as of 1976, provides:

(f) *General Policies for Evaluating Permit Applications.* (1) The decision whether to issue a permit will be based on an evaluation of the probable impact of the proposed structure or work and its intended use on the public interest. Evaluation of the probable impact that the proposed structure or work may have on the public interest requires a careful weighing of all those factors that become

---

**3.** Quite obviously, these environmental concerns were not so apparent in 1953 and had not then been considered important enough to be set forth in Corps regulations.

relevant in each particular case. The benefit that reasonably may be expected to accrue from the proposal must be balanced against its reasonably foreseeable detriments. The decision whether to authorize a proposal and, if authorized, the conditions under which it will be allowed to occur, are therefore determined by the outcome of the general balancing process (*e.g., see* § 209.400, Guidelines for Assessment of Economic, Social and Environmental Effects of Civil Works Projects). That decision should reflect the national concern for both protection and utilization of important resources. All factors that may be relevant to the proposal must be considered; among those factors are conservation, economics, aesthetics, general environmental concerns, historic values, fish and wildlife values, flood-damage prevention, land-use classifications, navigation, recreation, water supply, water quality, and, in general, the needs and welfare of the people. No permit will be granted unless its issuance is found to be in the public interest.

█ The government contends that the interpretation of the relevant statutes and of regulations duly promulgated thereunder of the Army Corps of Engineers is a "discretionary function" and therefore exempt under § 2680(a) of the Federal Tort Claims Act. The precise scope of the discretionary function has not been definitively set forth in the pertinent authorities. *Compare Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) *with Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). However, decisions to grant or not to grant permits or licenses are generally considered discretionary. *See, e.g., Coastwise Packet Co. v. United States* 398 F.2d 77 (1st Cir.), *cert. denied*, 393 U.S. 937, 89 S.Ct. 300, 21 L.Ed.2d 274 (1968); *Lawrence v. United States*, 381 F.2d 989 (9th Cir.1967); *United States v. Morrell*, 331 F.2d 498 (10th Cir. 1964), *cert. denied*, 379 U.S. 879, 85 S.Ct. 146, 13 L.Ed.2d 86 (1965); *see also* 1 Moore's Federal Practice ¶ 0.65 [2.–4] at 700.120 n. 32.

█ Applying the principles of these cases to the facts here, this Court concludes that the Corps of Engineers was in fact exercising or performing, or failing to exercise or perform, a discretionary function or duty when it acted as it did here. It was for the Corps to determine whether and when plaintiff was required to secure a permit for the dredging and filling work in question. The statute in question and the regulations vested wide discretion in the Corps in making such a decision. Even if representatives of the Corps may have made a mistake in exercising the Corps' discretion in 1972 (or later), § 2680(a) does not permit the United States to be held responsible in a suit brought under the Federal Tort Claims Act. Thus, plaintiff's suit is also barred by 28 U.S.C. § 2680(a).

█ In seeking to distinguish the cases cited herein which have applied the discretionary function exception, plaintiff argues that the tort here is one of negligent misrepresentation by the Corps. It is asserted that the Corps negligently misrepresented that a permit was necessary in violation of the statute and the regulations, when in truth and fact such a permit was not required. But the Federal Tort Claims Act does not permit suit against the United States based on a claim of misrepresentation. 28 U.S.C. § 2680(h) excepts from the Act "any claim arising out of * * * misrepresentation." Moreover, this statutory exception includes negligent as well as intentional misrepresentation. *United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961); *Reamer v. United States*, 459 F.2d 709 (4th Cir.1972).

The case of *Fitch v. United States*, 513 F.2d 1013 (6th Cir.), *cert. denied*, 423 U.S. 866, 96 S.Ct. 127, 46 L.Ed.2d 95 (1975), involved an analogous claim of negligence asserted against the United States because of the wrongful induction into the Armed Forces of a registrant with an exempt lottery number. In reversing the District Court's judgment entered in favor of the plaintiff, the Sixth Circuit said the following (at 1015–1016):

Although Appellees cast their complaint in the guise of a negligence action, this does not automatically take the case outside the misrepresentation exception. Courts must "look beyond the literal meaning of the language to ascertain the real cause of complaint." *Hall v. United States*, 274 F.2d 69, 71 (10th Cir.1959), *quoted with approval United States v. Neustadt*, 366 U.S. at 703, 81 S.Ct. 1294. In *Hall*, the plaintiff sold his cattle at a market loss after Government inspectors mistakenly reported that his cattle were diseased. Hall argued that the inspectors' negligent testing rather than the erroneous report had caused his loss and sued the United States under the Act. The Tenth Circuit rejected this attempt to avoid the misrepresentation exception, stating:

> Plaintiff's loss came about when the Government agents misrepresented the condition of the cattle, telling him they were diseased when, in fact, they were free from disease * * * This stated a cause of action predicated on a misrepresentation. 274 F.2d at 71.

As in *Hall*, Appellees' complaint "arose out of" a negligent misrepresentation. It occurred when Government agents misrepresented Clyde Fitch's obligation to enter the Army, telling him that he was required to serve when, in fact, he was free from that duty.

Similarly, in this case, the complaint arose out of the allegedly negligent misrepresentation of the Corps in December 1972 that plaintiff would need a permit, despite the 1953 authorization. Although the complaint is couched in terms of negligence, counsel for plaintiff conceded at the hearing that the alleged tort was "akin to negligent misrepresentation but more than that." This Court is satisfied that the alleged tort is either negligence or negligent misrepresentation. In both instances, suit is barred either by the discretionary function or by the misrepresentation exceptions to the Federal Tort Claims Act, 28 U.S.C. § 2680(a) and (h).

## V

### *Conclusion*

Defendant's motion to dismiss, treated as a motion for judgment on the pleadings, will be granted. This action is barred by the limitations period of 28 U.S.C. § 2401(b) and also by the statutory exemptions contained in 28 U.S.C. § 2680(a) and (h). Inasmuch as plaintiff may not assert a claim under the Federal Tort Claims Act, the ancillary contract claim is likewise barred under 28 U.S.C. § 1346(a)(2). *Reamer v. United States*, 459 F.2d 709, 710 (4th Cir.1972).

For the reasons stated, it is this 22nd day of February, 1978, by the United States District Court for the District of Maryland,

ORDERED:

1. That defendant's motion to dismiss the complaint, treated herein as a motion for judgment on the pleadings, be and the same is hereby granted; and

2. That judgment be and hereby is entered in favor of the defendant, with costs.