**GROUP HEALTH INCORPORATED, Plaintiff,**

v.

**UNITED STATES of America, and Otis R. Bowen, Secretary of Health and Human Services, Defendants.**

**No. 84 CIV. 2917 (PKL).**

United States District Court, S.D. New York.

June 10, 1987.

De Forest & Duer, New York City, John M. O'Connor, of counsel, for plaintiff.

Rudolph Giuliani, U.S. Atty., for S.D. N.Y., New York City, Susan E. Harkins, of counsel, for defendants.

## OPINION & ORDER

LEISURE, District Judge:

Plaintiff in this action, Group Health Incorporated ("GHI"), seeks to recover $3.3 million in damages from the United States under the Federal Tort Claims Act ("FTCA"). GHI also seeks judicial review under 42 U.S.C. § 1395*oo* of a decision of the Secretary ("Secretary") of the United States Department of Health and Human Services ("HHS"), which denied Medicare reimbursement to Hillcrest General Hospital ("Hillcrest") for certain interest expense allegedly incurred during the 1977 cost year. Defendants have moved: (1) to dismiss the FTCA claims for lack of subject matter jurisdiction; (2) alternatively, for summary judgment on the FTCA claims; and (3) for summary judgment on the remaining causes of action set forth in the amended complaint.

### Factual Background

The following recitation is limited to the facts pertinent to the instant motions. The sequence of events giving rise to this litigation has been described previously by the Court of Appeals for the Second Circuit and by three judges of this Court. *See Group Health Inc. v. Blue Cross Association,* 793 F.2d 491 (2d Cir.1986); *Group Health Inc. v. Schweiker,* No. 80 Civ. 6163 (S.D.N.Y. docketed Mar. 23, 1982) (Carter, J.), *aff'd,* 742 F.2d 1434 (2d Cir.1983), *cert. denied,* 467 U.S. 1225, 104 S.Ct. 2677, 81 L.Ed.2d 873 (1984); *Group Health Inc. v. Blue Cross Association,* 587 F.Supp. 887 (S.D.N.Y.1984) (Sweet, J.); *Group Health Inc. v. Blue Cross Association,* 625 F.Supp. 69 (S.D.N.Y.1985) (Leisure, J.), *appeal dismissed,* 793 F.2d 491 (2d Cir.1986).

GHI is a nonprofit health services corporation organized under Article IX–C of the New York State Insurance Law. Its activities are regulated by the New York State Insurance Department ("Insurance Department"). *See* Statement of Defendants Pursuant to Local Rule 3(g) ("Defendants' 3(g) Statement") at ¶ 1. At all times relevant to this action, GHI acted as a carrier under Part B of the Medicare program. *Id.* at ¶ 2. At all relevant times, Hillcrest was a provider of Medicare services. *Id.* at ¶ 3. Blue Cross Association ("Association") and Blue Cross/Blue Shield of Greater New York ("Blue Cross") served as fiscal intermediaries under Part A of the Medicare program. *Id.* at ¶ 4. With HHS' approval, the Association entered into a subcontract with Blue Cross in which the Association delegated some of its assignments to Blue Cross. Pursuant to this subcontract, Blue Cross acted as Hillcrest's fiscal intermediary. *Id.* at ¶ 5. Blue Cross also provided hospital and health-related benefits under its own reimbursement program. *Id.* at ¶ 6.

In 1973, GHI applied to the Insurance Department for permission to purchase

Hillcrest for $6.35 million. Affidavit of Susan E. Harkins, Assistant United States Attorney, sworn to on July 29, 1986, ("Harkins Aff."), Exh. B.[1] The Insurance Department approved the purchase, provided GHI invested no more than $2 million of its own funds and financed the balance of the purchase price with a nonrecourse mortgage. Exh. C.

In January 1974, GHI submitted to the Insurance Department an amended application for permission to buy Hillcrest with its own funds at a reduced price of $5.79 million. In its amended application, GHI stated that it was unable to obtain acceptable mortgage financing. GHI noted, however, that under a proposed amendment to the Blue Cross reimbursement formula, GHI would receive a return on its investment in Hillcrest. Exh. D. *See also* Exh. E.

On February 15, 1974, the Insurance Department approved GHI's amended application to purchase Hillcrest on the condition that the proposed amendment to the Blue Cross reimbursement formula was approved by the New York State Health Department ("Health Department"). The Insurance Department stated that if the amendment to the Blue Cross reimbursement formula was not approved, GHI would have to obtain a nonrecourse mortgage in a minimum amount of $2 million within 90 days after it acquired Hillcrest. Exh. F.

Notwithstanding that the amendment to the Blue Cross reimbursement formula had yet to be approved, GHI bought Hillcrest on February 28, 1974. Exh. G., ¶ 3. By letter dated March 26, 1974, the Health Department informed Blue Cross that the proposed amendment to its reimbursement formula would not be approved. As to GHI's acquisition of Hillcrest, the Health Department stated that it had reached a joint conclusion with the Insurance Department that GHI's purchase of Hillcrest would be construed as a loan from restricted funds. Exh. I.

By letter dated May 21, 1974, GHI informed Blue Cross that it would give a $6 million mortage to Hillcrest, payable over 30 years at the rate of nine percent. Exh. J. On or about June 11, 1974, almost four months after GHI had bought Hillcrest, Blue Cross informed GHI that the terms of the mortgage were acceptable for Medicare reimbursement. Exh. K.

Hillcrest included the interest expense on the mortgage in its annual Medicare costs reports for the 1974 through 1980 fiscal years. Amended Complaint at ¶ 16. In 1977, during its audit of Hillcrest's 1975 costs reports, Blue Cross discovered that Hillcrest had paid no interest to GHI with respect to the 1974 and 1975 interest deductions up to and including the date of the field audit. Blue Cross then referred the matter to HHS. Exh. P at 3.

By letter dated September 29, 1978, HHS notified Blue Cross that the interest expense was not reimbursable under Medicare. HHS determined that GHI's purchase of Hillcrest was an investment, not a loan, and that GHI was not entitled to a return on its investment because it was not a proprietary organization. HHS further stated that even if the transaction were construed as a loan, the interest was not reimbursable because GHI and Hillcrest were related entities. Accordingly, HHS directed Blue Cross to issue a Notice of Program Reimbursement ("NPR") and to disallow the interest expense for all outstanding years. Exh. L.

On or about March 20, 1979, March 30, 1979, and April 19, 1979, Blue Cross issued to Hillcrest NPRs disallowing all of the interest expense it had claimed for the 1976, 1975 and 1974 fiscal years. Exh. M. Hillcrest timely requested hearings on the NPRs before the Provider Reimbursement Review Board ("PRRB"). Exh. N. On June 10, 1980, the PPRB held a hearing to determine whether Blue Cross' disallowance of the interest expense for the 1976, 1975 and 1974 fiscal years was appropriate. In a decision dated September 19, 1980, the

---

1. All citations to exhibits hereinafter in the form of "Exh. ___," refer to the exhibits annexed to the Harkins Aff.

PPRB determined that the interest expense was not reimbursable under Medicare. Exh. P.

On October 29, 1980, GHI filed a complaint seeking judicial review of the PRRB decision pursuant to 42 U.S.C. § 1395oo. On cross motions for summary judgment, the Court granted the Secretary's motion. *Group Health Inc. v. Schweiker*, No. 80 Civ. 6163 (S.D.N.Y. docketed Mar. 23, 1982), *aff'd*, 742 F.2d 1434 (2d Cir.1983), *cert. denied*, 467 U.S. 1225, 104 S.Ct. 2677, 81 L.Ed.2d 873 (1984).

On or about November 30, 1979, Blue Cross issued an NPR disallowing Hillcrest's claim for reimbursement of the interest expense for its 1977 fiscal year. By letter dated April 14, 1980, Hillcrest requested a hearing before the PRRB. Defendants' 3(g) Statement at ¶ 26.

On September 20, 1982, GHI filed an administrative tort claim with the Secretary. In the claim, GHI asserted that Blue Cross was negligent in its dealings with GHI and that HHS was negligent in supervising Blue Cross, its agent. GHI claimed property damage in the amount of $3,345,035. Exh. U.

The PRRB hearing on the 1977 fiscal year reimbursement was held on September 15, 1983. Plaintiff's Statement Pursuant to Local Rule 3(g) ("Plaintiff's 3(g) Statement") at 16; Defendants' 3(g) Statement at ¶ 27.

By letter dated October 25, 1983, HHS denied GHI's administrative tort claim. Exh. V.

In a decision dated March 27, 1984, the PRRB affirmed Blue Cross' disallowance of Hillcrest's interest expense. Amended Complaint at ¶ 25; Plaintiff's 3(g) Statement at ¶ 16. The PRRB's decision became the final decision of the Secretary on April 23, 1984, when the Secretary declined to reverse, affirm or modify the determination. Plaintiff's 3(g) Statement at ¶ 16; Defendants' 3(g) Statement ¶ 27.[2]

GHI commenced the instant action in this Court on April 25, 1984. GHI also filed a tort action against the Association and Blue Cross in the Supreme Court of the State of New York, County of New York. Exh. W. The Association and Blue Cross removed the state action to this Court pursuant to 28 U.S.C. § 1442(a)(1). HHS then intervened as a defendant in the removed action, which was consolidated on September 25, 1984, with GHI's case against the United States and the Secretary. The Association and Blue Cross filed a motion for summary judgment, in which HHS joined. This Court denied the motion. *Group Health Inc. v. Blue Cross Association*, 587 F.Supp. 887 (S.D.N.Y.1984). The Association, Blue Cross and HHS filed appeals, which were dismissed for lack of appellate jurisdiction. *Group Health Inc. v. Blue Cross Association*, 793 F.2d 491 (2d Cir. 1986).

### The Amended Complaint

The amended complaint in this action against the United States and the Secretary contains eight claims for relief. In the first three claims, which are brought under the FTCA, GHI alleges that Blue Cross was negligent in failing to consult HHS or the Association before deciding that Medicare would reimburse the interest expense, ¶ 36; that Blue Cross' decision was negligent, ¶ 37; that HHS negligently failed to supervise the Association and Blue Cross, ¶ 43; and that the Association negligently failed to supervise Blue Cross, ¶ 49. According to GHI, the United States is liable for the negligence of Blue Cross and the Association because any acts performed "in the exercise of the[ir] activities [as] fiscal intermediar[ies]" constituted conduct of Government employees "acting within the scope of their employment." ¶¶ 38, 51.

The fourth through eighth causes of action challenge the Secretary's decision to deny Hillcrest's claim for reimbursement of the interest expense allegedly incurred during the 1977 cost year. ¶¶ 55–75. More

---

**2.** Neither party has submitted a transcript of the hearing before the PRRB held on September 15, 1983, nor a copy of the PRRB's decision, dated March 27, 1984, denying reimbursement for the 1977 cost year.

specifically, the fourth cause of action alleges that the regulation upon which the Secretary relied in denying the claim, 42 C.F.R. § 405.419(c), is unconstitutional. ¶ 59. The fifth cause of action alleges that the same regulation contravenes the Medicare statute. ¶ 62. The sixth cause of action asserts that the PRRB's decision is arbitrary, capricious and unsupported by substantial evidence. ¶ 66. The seventh cause of action challenges certain alleged procedural defects in the PRRB's decision. ¶¶ 67–68. The eighth cause of action alleges that the Secretary is estopped from reversing Blue Cross' determination that Medicare would reimburse the interest expense. ¶ 75.

*Statutory and Regulatory Framework*

The Medicare program is a federally-funded health insurance program for the aged and disabled. 42 U.S.C. §§ 1395–1395xx. Part A of the program provides insurance coverage for hospital, related post-hospital, home health and hospice care. 42 U.S.C. § 1395c. Under the statute, Part A benefits may be paid only to those who provide Medicare services. 42 U.S.C. § 1395f(a). *See also* 42 U.S.C. § 1395x(u) (statutory definition of provider). Accordingly, providers of health care services participating in Part A of the program are prohibited from charging eligible patients for services covered by Medicare. 42 U.S.C. § 1395cc. Instead, providers are reimbursed for furnishing the services out of the Federal Hospital Insurance Trust Fund. 42 U.S.C. § 1395g(a).

In consideration of providers' financial needs, Congress mandated that providers receive estimated interim payments at least once a month. *Id.; see* 42 C.F.R. §§ 405.405(c), 405.454(a) (1984). The determination of the actual amount of payment that is due to a provider is made annually and is based upon the costs reports that providers are required to submit at the end of their fiscal year. 42 C.F.R. §§ 405.406(b), 405.454(f) (1984). After these costs reports are audited, retroactive adjustment is made for any overpayment or underpayment in the estimated interim payments. 42 C.F.R. §§ 405.454(f), 405.1803 (1984).

Providers are entitled to elect to receive Medicare reimbursement through public or private organizations known as "fiscal intermediaries." 42 U.S.C. § 1395h; 42 C.F.R. § 421.103 (1984). Under the statute and the contract that each fiscal intermediary must enter into with the Secretary, the fiscal intermediary is delegated the duties of auditing the records of the provider, determining the amount of reimbursement to be paid to the provider and making the reimbursement. 42 U.S.C. § 1395h(a); 42 C.F.R. § 421.100 (1984). The fiscal intermediary also resolves disputes concerning reimbursement decisions and reconsiders determinations that deny payments to providers. 42 C.F.R. §§ 421.100(e) & (f) (1984).

In addition, the fiscal intermediary "serve[s] as a center for, and communicate[s] to providers any information or instructions furnished to it by the Secretary and serve[s] as a channel of communication from providers to the Secretary." 42 U.S.C. § 1395h(a). Fiscal intermediaries are available to providers on a daily basis to answer questions and to deal with problems concerning Medicare reimbursement. 42 C.F.R. § 405.406(b) (1984). They also are authorized to respond to a provider's request for an advance decision on whether a particular item will be reimbursed by Medicare. Exh. Y at 47–48. Accordingly, fiscal intermediaries are considered important sources of consultative assistance in the interpretation and application of reimbursement principles. 42 C.F.R. § 405.406(b) (1984).

Decisions of a fiscal intermediary are ordinarily not binding on the Secretary. 42 C.F.R. § 405.1807 (1984). For a period of three years, such decisions remain subject to being reopened and revised at the direction of the Secretary. 42 C.F.R. § 405.1885(b) (1984). Decisions of a fiscal intermediary also may be reviewed by the PRRB, provided the amount in controversy is $10,000 or more. 42 U.S.C. § 1395oo(a)(2); 42 C.F.R. § 405.1835(a) (1984). PRRB decisions are subject to discretionary review by the Secretary, 42 C.F.R. § 405.1875(a) (1984), and may be reopened

and revised on motion of the PRRB or the provider. 42 C.F.R. § 405.1885(a) (1984). Providers may obtain judicial review of final PRRB decisions by filing a complaint in the District Court within 60 days after receipt of the decision. 42 U.S.C. § 1395oo (f)(1); 42 C.F.R. § 405.1877(a) (1984).

With regard to GHI's FTCA claims, the following provisions are pertinent.

[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally decided by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

### Subject Matter Jurisdiction

Defendants argue that GHI's first three causes of action should be dismissed for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(h)(3). Specifically, defendants argue that the FTCA claims are barred by § 2401(b) because no administrative claim was filed within two years after GHI's tort claims accrued. Defendants contend that "GHI knew in 1979 that it had

been injured, as well as the probable cause of that injury." Defendants' Memorandum of Law at 19. Blue Cross informed GHI on June 11, 1974, that Hillcrest's interest expense was reimbursable under Medicare. Then, in March and April of 1979, GHI received Blue Cross' NPRs, which stated that the interest expense could not be reimbursed and, consequently, that Hillcrest had to repay the reimbursement it had previously received. In 1979, GHI also was aware of HHS's September 29, 1978 letter in which HHS notified Blue Cross that its 1974 decision was clearly wrong.[3] Defendants argue that GHI had sufficient knowledge in 1979 to be aware of "the possibility of negligence" on the part of either Blue Cross or HHS. Defendants' Memorandum of Law at 19. Defendants conclude that the two-year time limit under § 2401(b) had already expired by the time that GHI filed its administrative claim in September 1982.

GHI responds that its FTCA claims did not accrue until the PRRB's decision denying reimbursement for Hillcrest's interest expense became the final decision of the Secretary. Plaintiff's Memorandum of Law at 23. With respect to the 1974–76 cost years, the PRRB's decision became final for the purposes of judicial review on November 18, 1980, which was 60 days after the PRRB had ruled adversely to GHI. *Id.* at 25; *see* 42 C.F.R. § 405.1877(a) & (b) (1984). With respect to the 1977 cost year, GHI was advised by letter dated April 23, 1984, that the Secretary had declined to disturb the PRRB's decision. GHI filed its notice of claim on September 16, 1982, which was *after* the decision as to the 1974–76 cost years became final, but *before* the decision as to the 1977 cost year became final.

GHI argues that its position is based on the doctrine of exhaustion of administrative remedies. Plaintiff's Memorandum of Law at 22. Plaintiff hypothesizes that

[h]ad GHI filed an administrative claim *and* an action in District Court under the FTCA without first seeking PRRB re-

---

**3.** A copy of the HHS letter was annexed to the position paper that GHI's attorneys submitted to the PRRB on January 14, 1980. Exh. O at 432,

482–84. GHI obtained discovery from Blue Cross in the PRRB proceedings in the summer of 1979. *Id.* at 496–97.

view, the government undoubtedly would have argued that GHI had not exhausted its remedies and that until such remedies were exhausted, any *claim* under the FTCA was premature.[4] *Id.* at 23 (emphasis added). Plaintiff's position, however, is based on: (1) a failure to address pertinent authority regarding accrual of claims under the FTCA; (2) a misunderstanding of the notice of claim requirement under § 2401(b); (3) an ignorance of the distinction between administrative review of the PRRB decision and relief available under the FTCA cause of action; and (4) a misreading of exhaustion of administrative remedies precedent.

### (1) *Accrual of FTCA Claims*

■ Under § 2401(b), a tort claim against the United States must be "presented in writing to the appropriate Federal agency within two years after such claim accrues...."[5] The standard for determining when a claim accrues is governed by federal law. *See, e.g., Kossick v. United States*, 330 F.2d 933, 935 (2d Cir.), *cert. denied*, 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964). Traditionally, it had been held that the limitation period "commences to run with the occurrence of the act or omission giving rise to the claim...." *Hammond v. United States*, 388 F.Supp. 928, 931 (E.D.N.Y.1975). *See also United States v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352, 358, 62 L.Ed.2d 259 (1979). In personal injury cases, federal courts have adopted the somewhat more liberal rule that an FTCA claim accrues "when 'the claimant has discovered, or in

the exercise of reasonable diligence should have discovered, the acts constituting the alleged malpractice....'" *Kubrick*, 444 U.S. at 115, 100 S.Ct. at 356 (citation omitted). The Supreme Court has refused, however, to approve an even more lenient standard under which accrual would be delayed until the plaintiff became aware that his injury was negligently inflicted. *Kubrick*, 444 U.S. at 123, 100 S.Ct. at 360. The Court recognized, and criticized, the consequences that such a rule would have on "a whole range of other negligence cases arising under" the FTCA. *Id.* at 124, 100 S.Ct. at 360. From a reading of the amended complaint in this case, it is plain that the acts and omissions which GHI claims to constitute negligence had all transpired by 1979; it is also clear that GHI was aware of the same by 1979 at the latest.[6]

■ To the extent that plaintiff's position on exhaustion of administrative remedies can be construed as an argument that GHI did not know the full extent of its injuries in 1979, it is well-settled that the accrual of an FTCA claim is not postponed while the plaintiff assesses the full amount of his damages. *See, e.g., Toal v. United States*, 438 F.2d 222, 225 (2d Cir.1971); *Lynch v. United States Department of the Army Corps of Engineers*, 474 F.Supp. 545, 549 (D.Md.1978), *aff'd*, 601 F.2d 581 (4th Cir.1979); *Newberg v. F.S.L.I.C.*, 317 F.Supp. 1104, 1106 (N.D.Ill.1970). *See also* Amended Complaint, ¶ 16.

---

4. This Court has previously dismissed GHI's sixth through eighth claims against Blue Cross and the Association, which alleged breach of contract, on the ground that plaintiff failed to exhaust its administrative remedies. 625 F.Supp. at 79–80. GHI now contends that this dismissal supports its opposition to the instant motion. Plaintiff's Memorandum of Law at 23. This argument is unfounded. The dismissal in the case against Blue Cross and the Association was premised on the Court's finding that the factual issues being presented at the administrative level were similar to those raised in GHI's contract claims. The same is not true of the instant case, as defendants note. The PRRB was not and could not have been requested to assess whether the conduct of Blue Cross, the Association and HHS was tortious and, if so, to

provide a damage remedy. Defendants' Reply Memorandum of Law at 12 n. 3.

5. The Court of Appeals for the Second Circuit has interpreted § 2401(b) to require both that the notice of claim be filed within two years and that suit must be brought within six months after final denial of the administrative claim. *Willis v. United States*, 719 F.2d 608, 612 (2d Cir.1983).

6. GHI does not dispute this point directly. Rather, plaintiff contends that the accrual issue is controlled by its interpretation of the doctrine of exhaustion of administrative remedies. Plaintiff's Memorandum of Law at 22–26.

## (2) *Notice of Claim*

■ Section 2401(b) "is the balance struck by Congress in the context of tort claims against the Government." *Kubrick*, 444 U.S. at 117, 100 S.Ct. at 357. Courts "are not free to construe it so as to defeat. its obvious purpose, which is to encourage the prompt presentation of claims." *Id.* Contrary to what plaintiff implies, GHI would not have been required, in order to comply with § 2401(b), to rush into federal court to pursue its claim.[7] "[I]t is the presentation of a claim in writing to the appropriate agency, not the filing of a suit, that must be done within two years." *Morano v. U.S. Naval Hospital*, 437 F.2d 1009, 1010 (3d Cir.1971). *See also Bridgford v. United States*, 550 F.2d 978, 981 n. 2 (4th Cir.1977) ("[T]he significant event is the filing of the claim rather than the bringing of the lawsuit.")

Recognition of the function of § 2401(b) confirms this conclusion. Section 2401(b) creates a mandatory administrative claims procedure, which requires prior presentation of a claim to the affected agency. *Flickinger v. United States*, 523 F.Supp. 1372, 1376 (W.D.Pa.1981). It "is designed to improve and expedite disposition of monetary claims against the government by establishing a system for prelitigation settlement...." *Id. See also Interboro Mutual Indemnity Insurance Co. v. United States*, 431 F.Supp. 1243, 1246 (E.D.N.Y. 1977). There is thus no basis for suggesting that, if plaintiff had timely filed its notice of claim, the Government could have successfully argued that GHI was acting prematurely.[8]

## (3) *Distinctness of FTCA Relief*

■ GHI argues that its cause of action under the FTCA did not accrue until administrative review of certain Medicare reimbursement decisions was complete.[9] This argument fails to recognize that GHI's FTCA claims are distinct from its right to judicial review of the administrative process which determined that Hillcrest's in-

terest expense was not reimbursable by Medicare. A final decision by the PRRB is a prerequisite to GHI's right to judicial review of the Medicare administrative process under 42 U.S.C. § 1395oo. *See, e.g., Homewood Professional Care Center, Ltd. v. Heckler*, 764 F.2d 1242, 1248 (7th Cir.1985); *Association of American Medical Colleges v. Califano*, 569 F.2d 101, 109–10 (D.C.Cir.1977). The same is not true, however, with respect to the litigation of plaintiff's FTCA claims.

> In its FTCA claims ... GHI purportedly is not challenging HHS' decision to deny reimbursement of the interest expense. Rather, GHI is seeking damages for the alleged torts of the Association, Blue Cross and HHS.... Congress has mandated that the FTCA is the exclusive means of recovery for torts committed by agents and employees of the Government. 28 U.S.C. § 2679(a).

Defendants' Reply Memorandum of Law at 9. *Cf. Oppenheim v. Campbell*, 571 F.2d 660, 663 (D.C.Cir.1978) (cause of action under Administrative Procedure Act held "entirely distinct" from FTCA claim); *Mendiola v. United States*, 401 F.2d 695, 696–98 (5th Cir.1968) (distinguishing FTCA suit from workmen's compensation claim).

The doctrine of exhaustion of remedies is involved in the administration of FTCA claims, though not at all in the way GHI has suggested. Section 2401(b), designed to encourage the prompt presentation of tort claims to the appropriate agency, *see supra* p. 16, requires that a plaintiff seek administrative relief, *Szyka v. United States Secretary of Defense*, 525 F.2d 62, 65 (2d Cir.1975). Section 2675 then mandates that plaintiff exhaust his administrative remedy, 525 F.2d at 65, in the sense that plaintiff is prevented from instituting his FTCA action in court until the federal agency to which plaintiff presented his notice of claim pursuant to § 2401(b) has disposed of it. 28 U.S.C. § 2675(a). *See Wil-*

---

**7.** *See* Plaintiff's Memorandum of Law at 23; *see also supra* p. 13.

**8.** *See also infra* p. 18 (discussion of § 2675).

**9.** GHI's argument could be recharacterized as contending that the time limit under § 2401(b) for filing a notice of claim was tolled during the Medicare administrative review process.

*lis*, 719 F.2d at 612. Once that agency has denied the tort claim in writing, or has failed to dispose of the claim within six months, plaintiff has leave under the statute to file his FTCA action in court. *Id.*

In context, then, plaintiff's position is that the FTCA statutory scheme, which is clearly designed to foster prompt settlement of tort claims and which includes its own carefully circumscribed exhaustion of remedies requirement, should be construed to allow lengthy tolling of its time limit for submission of a notice of claim. If plaintiff's position were accepted, such tolling would continue during the pendency of an entirely distinct administrative procedure, which is a prerequisite to judicial review of decision-making regarding events only factually related to plaintiff's tort claims. Not surprisingly, plaintiff has failed to cite a single authority which directly supports this anomalous result. *Compare Winston Bros. Co. v. United States*, 371 F.Supp. 130, 134 (D.Minn.1973) (pursuit of other permissive remedies held not to toll statute of limitations for FTCA claim).

■ In fact, it has been taken for granted that the date of accrual of an FTCA claim is not postponed during the pendency of a separate administrative appeal. In *Kubrick*, for example, plaintiff was pursuing an administrative appeal of a decision by the Veterans' Administration denying his claim for disability benefits at the same time that he was litigating his FTCA tort claim. *See Kubrick*, 444 U.S. at 114–15, 100 S.Ct. at 355–356; *Kubrick v. United States*, 435 F.Supp. 166, 170, 174 (E.D.Pa. 1977). The Government argued that plaintiff's claim accrued in January 1969 when he was aware of his injury and its probable cause. 444 U.S. at 118, 100 S.Ct. at 357. Plaintiff argued that his claim did not accrue until June 1971, when "he knew or could reasonably be expected to know that in the eyes of the law, [defendant's conduct] constituted medical malpractice."

444 U.S. at 118, 100 S.Ct. at 357; *see also* 435 F.Supp. at 170. Plaintiff's notice of claim pursuant to § 2401(b) was filed nineteen months later on January 13, 1973. 435 F.Supp. at 170, 174. As has already been discussed, the Supreme Court selected the January 1969 date. 444 U.S. at 123, 100 S.Ct. at 360. ·For purposes of the instant case, *Kubrick* is noteworthy for the absence of any suggestion that accrual of plaintiff's FTCA action was postponed until August 1972, when the Board of Veterans Appeals ("Board") published its final decision denying disability benefits for injuries which were also the focus of plaintiff's FTCA claim, or until July 1975, when the Board reconsidered its earlier decision.[10]

### (4) *Plaintiff's Authorities*

■ GHI contends that it did not suffer any " 'injury' for which a claim could be filed under the FTCA until it had exhausted its administrative remedies" for review of the PRRB's refusal to provide Medicare reimbursement for Hillcrest's interest expense. Plaintiff's Memorandum of Law at 22. The cases cited by plaintiff fail to lend support to its argument, however. Rather, they stand for the proposition that where a plaintiff's claim *arises under* a contract or statute contemplating exhaustion of administrative remedies as a mandatory precondition to a suit against the United States, plaintiff's right of action accrues at the time of the final administrative determination. *See Crown Coat Front Co. v. United States*, 386 U.S. 503, 507, 511–12, 87 S.Ct. 1177, 1181–82, 18 L.Ed.2d 256 (1967) (claim arising under contract requiring administrative review)[11]; *Association of American Medical Colleges v. Califano*, 569 F.2d 101, 108–110 (D.C.Cir.1977) (final decision of the Secretary or PRRB held necessary to jurisdiction under 42 U.S.C. § 1395oo ). *See also Lichtenfels v. Orr*, 604 F.Supp. 271, 275–76 (S.D.Ohio 1984) (appeal of illegal discharge claim to military board prior to litigation in district

---

**10.** *Kubrick* also involved the interpretation of § 2675(a), but the Government did not pursue that issue on appeal of the District Court's ruling. 444 U.S. at 115 n. 4, 100 S.Ct. at 356 n. 4; 435 F.Supp. at 186 n. 23.

**11.** *Crown Coat* involved an interpretation of the statute of limitations established by § 2401(a), not the notice of claim requirement for tort actions under § 2401(b).

court held mandatory). Of course, GHI's tort claims arise under the FTCA, which requires only that plaintiff first file a notice of claim with the appropriate agency, and then that such agency deny the claim (or fail to act for six months) before plaintiff instigates his court suit. §§ 2401(b); 2675(a). "The availability of ... other optional avenues of relief [does] not preclude the bringing of an action under the [FTCA]." *Winston Bros. Co.*, 371 F.Supp. at 134.

### Conclusion

■ "The United States government has waived its sovereign immunity conditionally, and, in actions under the FTCA, has consented to suit only when the statutory conditions of § 2401(b) have been satisfied." *In re "Agent Orange" Product Liability Litigation*, 506 F.Supp. 757, 760 (E.D.N.Y.1980). *See also Kubrick*, 444 U.S. at 117–18, 100 S.Ct. at 356–57 (admonition against extending waiver "beyond that which Congress intended"). If an action is not begun as prescribed in § 2401(b), "a federal district court is without jurisdiction to entertain it." *Hammond*, 388 F.Supp. at 930 (citations omitted). *See also Snorgrass v. United States*, 567 F.Supp. 33, 34 (E.D.N.Y.1983); *Pangrazzi v. United States*, 511 F.Supp. 648, 651 (E.D.Pa.1981); *In re "Agent Orange" Product Liability Litigation*, 506 F.Supp. at 760. Since plaintiff filed its notice of claim more than two years following the accrual of its tort claims, plaintiff failed to comply with § 2401(b). Accordingly, the Court lacks subject matter jurisdiction over the first three counts of the amended complaint, and they are hereby dismissed.[12]

### Plaintiff's Remaining Counts

GHI is not entitled to a trial on its fourth through eighth causes of action. The scope of the Court's review of those claims is governed by 5 U.S.C. § 706(2), *Friedman v. Heckler*, 765 F.2d 383, 386 (2d Cir.1985), and is limited to the record on which the Secretary's decision was based. *See, e.g., Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 284–86 (D.C. Cir.1981); *Hospital Association v. Toia*, 473 F.Supp. 917, 926 n. 17 (S.D.N.Y.1979). Defendants have moved for summary judgment on plaintiff's fourth through eighth causes of action. Plaintiff has responded that the motion is premature because discovery is incomplete and there are issues of fact that remain to be developed. *See* Plaintiff's Memorandum of Law at 17–21. *See also* Fed.R.Civ.P. 56(f). Defendants contend, however, that no discovery is necessary since the motion with respect to counts four through eight is controlled strictly by legal questions. Defendants' Reply Memorandum at 3. Moreover, plaintiff has failed to indentify any materially relevant factual issue which requires additional discovery.

Defendants assert that the fourth, fifth, sixth, and eighth counts in the amended complaint are barred by application of the doctrine of *res judicata*.[13] *See* Amended Complaint at ¶¶ 55–66, 69–75. Defendants contend that plaintiff's cause of action here is the same as that asserted by GHI in *Group Health Inc. v. Schweiker*, No. 80 Civ. 6163 (S.D.N.Y. docketed Mar. 23, 1982), *aff'd*, 742 F.2d 1434 (2d Cir.1983), *cert. denied*, 467 U.S. 1225, 104 S.Ct. 2677, 81 L.Ed.2d 873 (1984) (hereinafter referred to as *"Schweiker"*).

■ Under the doctrine of *res judicata*, or claim preclusion, "a judgment, once rendered by a court of competent jurisdiction, will be treated thereafter as the 'full measure of relief to be accorded between the same parties on the same ... cause of action.'" *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir.1985) (citation omitted).[14]

---

12. In view of the foregoing, the Court finds it unnecessary to address defendants' remaining arguments for dismissal on the ground of lack of subject matter jurisdiction and the alternative arguments for summary judgment on the first three claims.

13. Alternatively, defendants argue that the fourth, fifth, sixth, and eighth counts are barred by application of the doctrine of collateral estoppel or issue preclusion.

14. It is undisputed that the parties in the instant dispute are the same as those in *Schweiker*. Plaintiff has not contended that defendants

"Claim preclusion prevents litigation of a matter that could have been raised and decided in a previous suit, whether or not it was raised.... Although fair play demands that a party have his day in court, the doctrine of res judicata forecloses a second day." *Id.* (citations omitted).

The test for determining whether or not the first judgment will be accorded preclusive effect has been variously expressed by the Court of Appeals for the Second Circuit. Among the relevant criteria are: "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, ... whether the facts essential to the second were present in the first," *N.L.R.B. v. United Technologies Corp.,* 706 F.2d 1254, 1260 (2d Cir.1983), and "whether a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action...." *Herendeen v. Champion International Corp.,* 525 F.2d 130, 133 (2d Cir.1975). *Accord Tucker v. Arthur Andersen & Co.,* 646 F.2d 721, 727 (2d Cir.1981).

> The crucial element underlying all of these standards is the factual predicate of the several claims asserted. For it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which a litigant relies.

*Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1234 (2d Cir.), *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). *See also Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Services, Inc.),* 762 F.2d 185, 193 (2d Cir.1985); *Berlitz Schools of Languages of America, Inc. v. Everest House,* 619 F.2d 211, 215 (2d Cir.1980).

■ In arguing that its instant cause of action is not the same, for *res judicata* purposes, as the one in *Schweiker,* plaintiff has not referred directly to any of the foregoing criteria. *See* Plaintiff's Memorandum of Law at 51–52. Plaintiff relies, instead, on the assertion that all of its

should not be permitted in their preclusion arguments to refer to the substance of the Second Circuit's *Schweiker* decision, which was in the

claims here are directed to a cost year not involved in *Schweiker.* This assertion is overly broad. Only one of plaintiff's claims actually depends for its "factual predicate" on the particular cost year for which reimbursement of interest expense was sought. *See Berlitz Schools,* 619 F.2d at 215; *Levine,* 554 F.2d at 1234. In its sixth count here, GHI seeks to challenge the PRRB's decision denying its claim for reimbursement of the interest expense allegedly incurred by Hillcrest during the 1977 cost year. In *Schweiker,* plaintiff asserted a claim based on the PRRB's reimbursement decisions with respect to the 1974–76 cost years. *See* Exh. Q (*Schweiker* Complaint) at ¶¶ 22–23.

In the instant case, plaintiff's fourth count (alleging that the regulation upon which the Secretary relied in denying reimbursement is unconstitutional), fifth count (alleging that the same regulation contravenes the Medicare statute), and eighth count (alleging that the Secretary is estopped from reversing Blue Cross' reimbursement determination) do not depend on the specific cost year involved. In fact, the fourth, fifth and eight counts are identical to claims that were previously made in *Schweiker. See* Exh. Q at ¶¶ 35–41 (count four herein), 33–34 (count five herein), 24–32 (count eight herein). With regard to those parallel sets of claims, it is clear that the same connected series of transactions is at issue, the same evidence is needed for support, the facts essential to the second set were present in the first, and a different judgment here would impair interests established by *Schweiker.* GHI is not entitled to a "second day" in court on its fourth, fifth and eighth counts. *See Gallagher,* 761 F.2d at 879. Accordingly, those counts are hereby dismissed.

■ Plaintiff's sixth claim here stands on a different footing. *See* Amended Complaint at ¶¶ 64–66. In that count, GHI alleges that the PRRB's decision regarding the 1977 cost year reimbursement, dated March 27, 1984, is arbitrary and capricious,

form of a summary order. *See* Defendants' Memorandum of Law at 36–37.

not supported by substantial evidence, and not in accordance with law. Defendants have argued, basically, that the PRRB's 1984 decision was a mere rehash of its decision issued September 19, 1980, which denied reimbursement for the 1974–76 cost years. For example, defendants state that

> [t]he administrative transcript of the PRRB hearing on Hillcrest's 1977 claim contains no new or different essential facts. Rather, it consists largely of testimony and documents contained in the *Schweiker* transcript. In fact, at the PRRB hearing on Hillcrest's 1977 claim, GHI submitted one hundred sixteen pages of testimony given at the PRRB hearing on Hillcrest's 1974 through 1976 claims.... GHI called no factual witnesses and submitted no factual documents that were not contained in the *Schweiker* transcript.

Defendants' Memorandum of Law at 44.[15] The fact remains, however, that GHI's sixth count seeks judicial review, pursuant to 42 U.S.C. § 1395oo(f)(1), of a PRRB decision that was not even in existence at the time *Schweiker* was decided. GHI's action for review of the 1977 cost year decision, rendered by the PRRB on March 27, 1984, does not constitute a "matter that could have been raised and decided in" *Schweiker*. *See Gallagher*, 761 F.2d at 879. *See also Tucker*, 646 F.2d at 727. *Cf. supra* p. 17, 20 (Final decision of the PRRB is a prerequisite for right to judicial review under § 1395oo); Defendants' Reply Memorandum of Law at 9 (same). Accordingly, plaintiff's sixth count is not barred by application of the doctrine of *res judicata*.[16]

■ Finally, defendants argue that summary judgment should be entered on GHI's seventh count herein, which alleges certain procedural deficiencies in the PRRB's decision on the 1977 cost year. *See* Amended Complaint at ¶¶ 67–68. While defendants assert that "[t]his claim is without merit," they have not clearly identified the legal basis for this position. *See* Defendants' Memorandum of Law at 46–47; Defendants' Reply Memorandum of Law at 34–35. Accordingly, defendants'

---

15. GHI asserts that the primary difference between the administrative record established at the hearing on the 1974–76 cost years and that compiled prior to the decision on the 1977 cost year was the additional testimony of an expert witness in the latter case. Plaintiff's Memorandum of Law at 56.

16. The PRRB's refusal, in its March 1984 decision on the 1977 cost year, to retreat from its September 1980 decision on the 1974–76 cost years is hardly surprising. But it would be illogical and unfair to require plaintiff to have predicted that outcome at the time of *Schweiker*. The mere fact that the PRRB itself held a new hearing and issued a further decision with regard to the 1977 cost year supports this conclusion. *See* Defendants' 3(g) Statement at ¶ 27; Plaintiff's 3(g) Statement at ¶ 16. *See also supra* note 2.

For similar reasons, plaintiff's sixth count herein is not barred in toto by application of the doctrine of collateral estoppel, or issue preclusion. "For application of principles of collateral estoppel, 'the issue as to which preclusion is sought [must] be identical with the issue decided in the prior proceeding.'..." *Cullen v. Margiotta*, 811 F.2d 698, 732 (2d Cir.1987) (citations omitted). *See also, e.g., RX Data Corp. v. Department of Social Services*, 684 F.2d 192, 197 (2d Cir.1982). Plainly, review of the March 1984 decision is not identical to review of the September 1980 decision. It is possible that collateral estoppel would apply to preclude GHI from litigating herein particular findings which led to both of the PRRB's decisions and which were actually upheld in *Schweiker*. *See Humana, Inc. v. Heckler*, [1984–2 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 33,960 at p. 9283 (N.D.Ala. Feb. 16, 1984) (applying collateral estoppel, despite different reimbursement years, on "issue of the proper treatment of the cost of assets acquired" through stock purchase); *Humana, Inc. v. Schweiker*, [1983–2 Transfer Binder] Medicare and Medicaid Guide (CCH) ¶ 32,912 at p. 9563 (M.D.Tenn. May 19, 1983) (applying collateral estoppel, despite different cost years, on issue of "what treatment should be afforded" stock purchase followed by merger). An example of such a finding might be the determination that GHI's purchase of Hillcrest did not involve a loan from donor-restricted funds within the meaning of 42 C.F.R. § 405.419(c). Seeking collateral estoppel as to particular issues, however, has not been defendants' approach on the instant motion. Defendants have argued, instead, that collateral estoppel bars GHI's sixth "claim" in its entirety. *See* Defendants' Memorandum of Law at 45. In fact, defendants relied on *Humana, Inc. v. Heckler* and *Humana, Inc. v. Schweiker* to support their claim preclusion arguments, even though the portions cited are clearly examples of issue preclusion. *See* Defendants' Memorandum of Law at 41. The Court does not reach the question of whether particular issues regarding GHI's sixth count may properly be precluded.

motion to dismiss plaintiff's seventh count is denied without prejudice to being renewed on more complete papers.

**SO ORDERED.**